3bu 311
131 760

CASE 83—PETITION EQUITY—MAY 22.

# Lewis vs. Wright, &c.

### APPEAL FROM MERCER CIRCUIT COURT.

1. Exceptions to depositions as incompetent evidence, which do not appear to have been acted on by the court below, will be regarded as waived by the court of appeals. (*Conn vs. Simms*, 3 *Met.*, 397.)

2. An attachment, sued out upon the ground that the defendant *so concealed himself that a summons could not be served on him*, should be sustained, provided it appears that the defendant did, in fact, either secrete himself at his place of abode, or depart therefrom to some other place, with the intention to delay or prevent his creditors from enforcing their demands, in the ordinary modes prescribed by law, by avoiding the service of a summons. (*Dunn, &c., vs. Salter*, 1 *Duvall*, 345.) For a review of the evidence, showing its sufficiency to sustain the attachment on the above ground, see opinion.

3. W. and D. purchased a lot of mules, &c., for the southern market, and in part payment therefor, executed a note, with L. as their security. Afterwards, without the knowledge or assent of D., W. and L. entered into a writing, by which they mutually agreed to share and divide equally the profits or losses of W. in the adventure. This agreement did not make L. liable or bind him as one of the principals on the note. (*Duncan vs. Lewis*, 1 *Duvall*, 183.)

T. T. ALEXANDER and
BRAMLETTE & SON,                                    For Appellant,
CITED—

Civil Code, secs. 228, 238, 221, 161, 251, 440, 250, 670.
2 *Duvall*, 481 ; *Anderson vs. Sutton.*
1 *Duvall*, 342 ; *Dunn, &c., vs. Salter, &c.*
4 *Met.*, 342 ; *Allen vs. Brown.*
Act of February 28, 1863, *Myers' Sup.*, 44.
1 *Met.*, 397 ; *Short vs. Tinsley, &c.*
Act of Dec. 13, 1861, to amend Code, Stant. R. S., 38.
Acts of March 15, 1862, and Dec. 23, 1861, R. S., 42.

James Simpson and
John B. Huston,                        For Appellee Redmon,
                      CITED—
          *Civil Code, sec. 221, and subsecs.*

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

The somewhat complicated litigation presented by the large record before us embraces several suits originally prosecuted in the counties of Green and Clark, and finally tried together in the Mercer circuit court. From a brief outline of these several cases, the questions to be determined on this appeal may be deduced—

1. On the 29th day of October, 1861, William Lewis filed his petition in the Green circuit court against John W. Wright, asserting claims against Wright, as follows: 1st. A debt evidenced by the note of Wright to him of two thousand five hundred dollars, due the first day of January, 1861 ; 2d. Another debt evidenced by a note of seven hundred and sixty-eight dollars, due July 2d, 1860; 3d. Another note of seven hundred and seventy-two dollars, due February 1st, 1861 ; also two other notes of one thousand five hundred and eighty-three dollars and thirty-three and one third cents each, dated the 19th of March, 1859, and severally due at one and two years thereafter, made payable to W. W. Ingram, for a tract of land, and having a lien thereon, and assigned by Ingram to Lewis, a credit of seven hundred dollars being indorsed on one of these notes. In said petition the plaintiff sought to enforce the vendor's lien for said last mentioned notes, and prayed an attachment against Wright's property for the entire amount of said claims, upon the alleged ground that Wright, at that time, so concealed himself that a summons could not be served upon him; and, accordingly, an attachment was sued

out and levied on the land, slaves, and personal property of Wright.

Lewis, afterwards, by amended pleading, set up other claims and causes of action against Wright, and, among them, he alleged various large debts, in which he was liable, as the surety of Wright, to others; and upon additional grounds disclosed, sued out further orders of attachment, which were levied, as the first was, upon the defendant's property.

2. On the 27th day of December, 1861, John W. Redmon exhibited his petition in equity in the Clark circuit court against said Wright and William R. Duncan, alleging an indebtedness of said Wright and Duncan to him, by promissory notes exhibited, of four thousand eight hundred dollars, due January 1st, 1861, and four thousand eight hundred dollars due March 1st, 1861, less a credit of one thousand five hundred dollars, paid the 25th of March, 1861; and on the alleged grounds that Wright, who resided in Green county, had left the county of his residence to avoid the service of a summons, and having left said county, and been voluntarily absent therefrom for thirty days, had been, during that time, within the so-called Confederate States or their military lines, an attachment for said claims was sued out against the property of Wright, which was levied by the sheriff of Green county on Wright's property, *subject to* the previous levy of the attachment of Lewis.

3. On the 9th day of June, 1862, H. A. Headley brought an action, in the Green circuit court, against said Wright and Duncan and William Lewis, on their note to him for seven thousand two hundred dollars, dated July 10th, 1860, and due the 1st day of March, 1861; for which orders of attachment were issued, and levied on the property of Lewis and Duncan, and in the hands of Wright and others as garnishees.

The validity of most of Lewis' claims, and the grounds of his attachment, were controverted by Wright and by Redmon, who was admitted as a party to the suit of Lewis; and as to the extent and nature of the liability of Duncan, and that of Lewis, on the note to Headley, several questions were raised, the most important of which involving the claim of Lewis to be indemnified as the surety of Wright and Duncan.

These causes so involving antagonistic and conflicting claims and interests were, by judicial orders, transferred from the Green and Clark courts to the Mercer circuit court; from the judgments and orders of which this appeal is prosecuted.

Respecting the several points urged by the counsel for the appellant, as affecting the validity of the attachment levies of Redmon and Headley, and the regularity of the removal of the cases to the Mercer circuit court, and the jurisdiction of that court over the various subjects of controversy, no available error prejudicial to the appellant is perceived.

While the court below, in the main, sustained the claims of Lewis against Wright as just, it adjudged that Lewis acquired no lien, by the levy of his attachment on Wright's property, which is, by the judgment, subjected to the claim of Redmon.

Whether it was or not true, that Wright so concealed himself that a summons could not be served upon him, on the 29th day of October, 1861, within the meaning of the 5th subdivision of section 221 of the Civil Code, is the first question to be disposed of, and its solution may obviate the necessity of inquiring into the other grounds of attachment relied on by the appellant. Said ground of attachment was controverted by Wright and Redmon; Wright conceding his absence from home when the at-

tachment was sued out, claimed to have left the county of his residence on business of himself and Lewis, and with the knowledge and assent of the latter, and denied that he concealed himself as alleged; and Redmon, also resisting the attachment on substantially the same grounds as alleged by Wright, further contested the proceeding of Lewis as not prosecuted in good faith, and as a fraudulent attempt to encumber the property of Wright to the exclusion of the claims of his creditors.

It appears, that when the appellant commenced his proceeding, friendly relations existed between him and Wright. They had been engaged in trading in stock in co-partnership—buying in Kentucky and selling in Mississippi and Louisiana—the business in the Southern States being mainly transacted by Wright; and debts in those States were still owing to the firm, which were in danger of being lost in consequence of the war then raging. These facts certainly tend to raise an inference that Lewis desired Wright to leave his home, for the purpose of reaching the section of country then becoming the scene of military operations, to make collections of their partnership debts. And, although it does not appear that Wright's absence from his home was constrained by personal danger, as he seems to have been of a class of citizens who were regarded as disloyal to the Federal Government by those who, at that time, in Kentucky possessed the power or the influence to render them the objects of violence or military arrest, it is not improbable that Wright at that time, in common with many others, had reason to feel in some degree unsafe at his home. From these circumstances, and a letter from Lewis to Wright, dated the 6th day of December, 1861, it is mainly insisted for the appellees, that, notwithstanding the testimony of the sheriff and others, conducing to

show that Wright could not be found about his home when the attachment was obtained, the circuit court properly adjudged that the attachment was groundlessly sued out.

The letter referred to is as follows:

"GREENSBURG, Dec. 6, 1861.

"*Mr. John W. Wright :*

"DEAR SIR: As I have an opportunity to drop you a line, I embrace it, to request you to let me hear from you whether you have been to New Orleans, or heard from there;· and what prospects of making collections there, if any. You have learned, I suppose, that I had, soon after you left home, *had* an attachment levied upon your property. I took that course, after consulting with your political friends, believing it to be to your interest as well as mine, as it was the only way, as we then believed, to prevent your property being confiscated. I have also had an attachment levied on the property, or some of it, of D. M. Williams, to secure me as indorser on your acceptance for three thousand dollars, due the 18th of this month. I hope you will take an early opportunity to write me.

"Very respectfully, yours, &c.,

"WM. LEWIS."

This letter, written more than a month after the attachment was sued out, appears to have been sent by hand to, and received by, Wright, at or near Bowling Green, Kentucky, where a portion of the Confederate forces were then encamped, and but little over one day's travel from the residence of Wright.

While the writer clearly expresses the fact, that, in instituting his proceeding, he sought to protect both himself and Wright against loss, by enforcing his own real or supposed legal rights to subject ·the property

under attachment to his debts against Wright, before the same should be lost to them both by some apprehended act of confiscation, the letter contains no express or implied admission that the attachment was not properly obtained, and on sufficient legal grounds; and, so far from disclosing a fraudulent purpose with reference to other creditors of Wright, not benefited by the attachment referred to, the letter contains no allusion to them whatever.

We do not think the inference can fairly be drawn from this letter that Wright had left Green county when the attachment was sued out, or that, at that time, he was not concealing himself from those whose duty it was to execute civil process. The writer speaks of suing out the attachment *soon after Wright left home,* but says nothing to exclude the idea that his absence was, at that time, self-imposed to evade the officers of the law, as implied by the sworn statement on which the attachment was issued.

A natural anxiety in regard to the business of Lewis and Wright in the South, may well have induced the inquiry, whether, since the latter had then been absent for more than a month, and part of the time, at least, within the Confederate military lines, he had or not gone to give some attention to that business, whatever might have been the circumstances of his leaving home originally.

The theory of those who contest the validity of Lewis' attachment, as it virtually concedes that, when said attachment was sued out, he could not have been served with a summons in the county of his residence, and undertakes to show that this fact existed for reasons different from the alleged concealment of himself, and inconsistent with it, to some extent relieves the appel-

lant of the burthen of proof, otherwise devolved upon him by this issue. It appears by the testimony of D. M. Williams, John W. Estis, and Whitfield J. Smith, that Wright was at his home on the 20th of October, 1861. Smith then bore to him a message from Lewis, that the latter wished to see him, to which Wright replied, that "*Lewis could see him at a proper time.*" It is further proved by Williams that he saw Wright, as he thinks, " at his house, Tuesday after the 21st of October, 1861;" and he further says: "I saw him some days afterwards, I can't say how long, between Green and Little Barren rivers, driving some cattle." From this and other testimony, it appears that Wright was in Green county until about the time the attachment of Lewis was sued out; and it clearly appears, from the testimony of Woodring, the sheriff, and others, that for many weeks afterwards he could not, with reasonable diligence, be found in Green county, for the purpose of executing civil process upon him. There is no evidence that Lewis knew where Wright was when he sued out his attachment, nor that Wright had left his home for any lawful purpose, other than the facts and circumstances we have considered, unless the same can be gathered from his own deposition, which was taken both by Redmon and Headley.

Much of the testimony of Wright was directed to the issue formed by the affidavits of himself and Redmon, controverting the grounds of Lewis' attachments, and exceptions were filed by Lewis to this deposition as incompetent evidence; but they do not appear to have been acted on by the court below, and must, therefore, be regarded in this court as having been waived. ( *Conn vs. Simms*, 3 *Met.*, 397.)

Wright, in his testimony, is singularly self-contradictory. In attempting to show, by an interview between himself and Lewis, that he left his home at the instance of the latter, and went South to attend to their partnership business, he finally shows the substance and result of that interview to have been a request, on the part of Lewis, that he should go to live in Louisiana or Arkansas, with a view to attend to said business, which he declined to do ; and, although his direct examination imports that he left for the South immediately after having said conversation, his cross-examination discloses the fact that he remained in Green county for one or two months afterwards.

In our opinion, the judgment of the court below, that " the attachment sued out by Lewis on the 29th of October, 1861, and levied on the property of Wright, cannot be sustained," is erroneous, and the court, therefore, also erred in adjudging that Redmon, by the levy of his attachment on the property of Wright, thereby acquired a lien on the property, which was paramount to that of Lewis; and the correctness of this conclusion does not depend on the question whether Wright concealed himself in Green county or out of it, so that a summons could not be served upon him, provided he did in fact either secrete himself at his place of abode, or secretly depart therefrom to some other place, with the intention to delay or to prevent his creditors from enforcing their demands in the ordinary modes prescribed by law, by avoiding the service of a summons. (*Dunn, &c., vs. Salter*, 1 *Duvall*, 345.)

As to the claim of the appellant for contribution or indemnity, as against both Wright and Duncan, for money paid by him as their surety or as co-obligor in the note to Headley for seven thousand two hundred dollars,

the court seems to have reserved the subject from time to time for adjudication, and, finally, without determining it, to have stricken the causes from the docket. This is complained of as error, for which the judgment should be reversed.

The appellant, if regarded either as the partner of Wright & Duncan, in their contract for the purchase of stock of Headley, or as a principal co-obligor with them in the note, was certainly entitled to relief to the extent of any amount he may have paid in excess of his own due proportion of the debt; but it is insisted that he did not execute the note as a partner or principal, but, as the note expresses, as the surety of Wright & Duncan, and that he did not thereafter become otherwise bound, either to Headley or to the firm of Wright & Duncan, and, having paid a part of the debt, was entitled to recover the amount so paid as surety against both Wright and Duncan. That it was true, as alleged by Lewis, that he signed the note simply as the surety of Wright & Duncan, is, we think, a well-established fact.

But it further appears, that subsequently, Wright and Lewis, without the knowledge or assent of Duncan, entered into the following agreement: "Article of agreement between John W. Wright and Wm. Lewis, both of Green county, Kentucky. The said Wright has bought of H. A. Headley seventy-one mules and one negro man, for which has paid one thousand two hundred and fifty dollars down, two thousand five hundred dollars the first of December next, and two thousand five hundred dollars the first of January next, these two in bills payable at the counting-house of Benoist, Shaw & Co., New Orleans; the balance note for seven thousand two hundred dollars, due the first of March next, on all of which the said Lewis is surety, except the one thousand two

hundred and fifty dollars paid down; one horse of Wm. B. Carlisle at one hundred and fifty dollars, note due first March next. Said Wright is to take the above property to Louisiana and sell it for the best price he can, and paying the purchase money and necessary expenses. If there is any profit, to be equally divided between us; or should there be loss, to be equally divided between us. The said Wright is not entitled to any interest on the amount advanced. Also, one negro man at one thousand five hundred and fifty dollars paid down; but Wright is not entitled to any interest on either amount paid. J. W. WRIGHT,

"WM. LEWIS."

If Lewis had not already become bound by his signature to the note to Headley, he did not, we think, by his subsequent agreement with Wright, incur the responsibility of a joint purchaser of the property. (*Duncan vs. Lewis*, 1 *Duvall*, 183.) Nor did said agreement, in our opinion, constitute either a copartnership or joint interest in Lewis, Wright, and Duncan in the property. The agreement was not only without the sanction of Duncan, and, therefore, not obligatory upon him, but, as between Wright and Lewis, it does not import a community of interest in the property, but simply a contract, whereby Wright undertook to secure to Lewis one half the net profits which might be made, Lewis agreeing to bear, in a like proportion, the loss which might be sustained.

However obligatory the agreement may have been to render either Wright or Lewis liable to the other in the event of profits being made or losses sustained, it did not, according to our construction of it, either enlarge the responsibility of Lewis on the original contract with Headley, or diminish that of Wright & Duncan to reimburse him the amount he might have to pay as their

surety in the debt. Lewis was, therefore, entitled to recover, as against both Wright and Duncan, the amount paid by him on said debt to Headley.

Wherefore, for the errors indicated, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.