D. M. Williams *v.* Wm. Lewis et al.

**Fraudulent Conveyances—Insolvency of Vendor.**

Where a son-in-law sold and conveyed land to his father-in-law for the price of about one-fourth its actual value, and the son-in-law was at the time insolvent, and the only consideration actually paid by the father-in-law was the discharge of some debts of the son-in-law, and the property was afterwards conveyed to the wife of the son-in-law for the consideration expressed in the deed to the father-in-law, the conveyance was fraudulent as to the son-in-law's creditors.

**Fraudulent Conveyances—Sale for Nominal Price.**

The transfer and assignment of a debtor of his right to a chose in action to his son for a consideration of $200, and claim for several thousand dollars, out of which the son recovered $10,000, was held to be in fraud of the father's creditors.

APPEAL FROM TAYLOR CIRCUIT COURT.

December 6, 1873.

Opinion by Judge Pryor:

The evidence in this record establishes the fact that William Lewis, prior to the conveyance made by him to his father-in-law,

W. B. Carlisle, in February, 1862, was the owner of an estate consisting of lands and slaves, estimated at from eight to twenty thousand dollars in value. He also was entitled to debts asserted by him against Wright, etc., in the suit of Headly et al. v. Wright and Duncan, in the Mercer Circuit Court, amounting to ten or twelve thousand dollars. The tracts of land owned by Lewis, and conveyed by him to his father-in-law, contained in all 356 acres, and the slaves sold were fifteen in number. Lewis was largely indebted at the time the conveyance was made, and among the debts was included the debt of the appellant, Lewis. After the conveyance he remained in the possession of all the property conveyed, and so far as appears in the record, never, at any time, surrendered it.

The consideration, alleged to have been paid by the father-in-law, was five thousand dollars, a sum certainly less than the value of the property conveyed. Whether this consideration was actually paid or not, is involved in doubt. It may be assumed from the proof that some portion of the consideration had been paid in the discharge by the father-in-law of certain liabilities of Lewis; but from the relation of these parties, the one to the other, the manner in which the property was afterwards held and used by the grantor and his wife, the price paid therefor, connected with the insolvency of Lewis, and the additional fact that the land was afterwards reconveyed to Mrs. Lewis for the consideration expressed in the deed from her husband to her father, when no money had in fact been paid, and the failure of Carlisle to show how and in what manner the consideration was actually paid by him, constrains this court to conclude that the deed dated in February, 1862, was fraudulent as to creditors.

The whole estate of Lewis, worth (including his claim in the Cecil suit) not less than sixteen thousand dollars, is, in a short space of time, all conveyed and transferred to the father-in-law and son, and not one dollar left to pay creditors. It seems, however, that after the conveyance made in 1862, that Carlisle, the father-in-law, by virtue of the judgment rendered in the Mercer Circuit Court in the cases of Meadley, Dedman et al. v. Wright and Duncan, purchased the same land conveyed by the deed of 1862, and a deed was made him by the commissioner, under an

order of that court in the case. This deed,·made by the commissioner to Carlisle, has not been assailed by the appellant; and if it had been we are unable to perceive why Carlisle was precluded from making the purchase. If the deed made him by Lewis had been adjudged fraudulent by the proceedings had in the Mercer Circuit Court, we are aware of no principle of law or equity that would have prevented Carlisle from making the purchase under a judgment directing a sale of the property for the benefit of other creditors. The only fact appearing in that case, upon which the purchase of Carlisle could be defeated, if at all, is that the consideration for the conveyance, dated in February, 1862, entered into and formed part of the judgment under which the purchase was made. It is not necessary to consider this question, as the deed is not assailed. Mrs. Lewis must hold the land under the deed from her father, as we are not disposed to adjudge that the deed made by the commissioner of the Mercer Circuit Court to Carlisle was fraudulent, particularly when that deed had not been attacked.

The remaining question to be determined is whether the transfer and assignment by William Lewis to his son, John W. Lewis, of the Wright claim was fraudulent as to the creditors of William Lewis. A personal judgment had been obtained against Wright by William Lewis for a large sum of money, but the attachment obtained for the purpose of securing this debt had been discharged by an order of the Mercer Circuit Court in the consolidated causes of Meadley et al. v. Lewis, and insists that, as the attachment had been discharged and Wright, the debtor, was insolvent, no loss accrued to creditors by reason of this transfer. It is true that the judgment of the Mercer Circuit Court was adverse to the lien asserted by Lewis, by reason of his attachment; but nevertheless the claim was made available by the judgment of this court; and John W. Lewis, the son, realized eight or ten thousand dollars of that judgment, the consideration for the assignment of which was only two hundred dollars paid, and secured to be paid; and it does not appear from the· proof that the son ever paid to the father one dollar of this sum. It is true that John W. Lewis prosecuted an appeal to this court, and, as urged by his counsel, no part of the claim against Wright would have been realized but for his efforts in obtaining a reversal of the judgment.

This is no argument against the claim of the appellant. If the transfer has been made to the son before suit brought, and he had obtained the attachment, counsel could have argued, with the same propriety, that but for the efforts of the son in procuring the attachment, the debt could not have been made. The facts are, that the son, for the nominal consideration of two hundred dollars secured, and secured to be paid, collected this debt of ten thousand dollars, and now asserts right to the whole amount as against the claims of his father's creditors. The son may and doubtless did act in good faith, but to sanction such an act on the part of the father, and particularly with reference to all the facts of this case, of the existence of which the son must have been advised, would be establishing the doctrine that voluntary gifts and conveyances by the father to his children are to be sustained as against the rights of creditors.

It is unnecessary to allude to the many facts and circumstances proven showing conclusively the efforts on the part of Wm. Lewis to place his property beyond the reach of his creditors. In the litigation between the appellant, Williams, and Wm. Lewis, the father of the appellee, Wright was the witness upon whose testimony the court adjudged that the bill of exchange was made, and the money drawn thereon for the purpose and interests of a partnership, existing, as the witness stated, between Lewis and himself, and evidenced by a written agreement. This controversy was had in the Taylor Circuit Court, and has long since terminated favorably to the appellant, and is the judgment now sought to be enforced. It is a little remarkable that Lewis, during the progress of that litigation, failed to produce or require the production of the agreement spoken of by Wright as showing the existence and terms of the alleged partnership. He not only failed to do this, but seems not to have contested, with much effort, at least, the liability that Wright was attempting to impose upon him. Lewis instituted his action in the year 1861 in the Green Circuit Court to enforce various large claims that he held against Wright. This action seems to have been transferred to the Mercer Circuit and consolidated with other actions that had been instituted by various parties against Wright; and upon the final hearing in

that court it was adjudged that the agreement relied upon by Wright as evidence of the partnership with Lewis, was simply a contract to secure Lewis in one-half the net profits that might have been made by the adventure, upon his, Lewis, agreeing to bear one-half the loss. See Lewis v. Wright et al., 3 Bush 311. Wright, in the action of Williams v. Lewis, in which the present judgment sought to be enforced, was obtained, says that the proceeds of the bill on which Williams' name appeared as drawer, were applied to the purchase of the property in which Lewis was to have an interest in the profits, and bear, if any, a part of the loss, or to take the legal construction of the agreement placed upon it by Wright, to buy this property for the partnership. The cashier of the bank says that a portion of the proceeds of the four thousand dollar bill was applied to the payment of a note or bill of fifteen hundred dollars due by Wright, as principal, and Lewis as surety, and the balance drawn by Wright, etc. If Williams and Wright combined to defraud Lewis, and by so doing obtained this judgment, the chancellor would hesitate before enforcing it even in a proceeding like this, where the fraud had been discovered since the rendition of the judgment.

But has there been any fraud shown in the case, and does any really exist? Certainly none on the part of Williams, and we perceive none on the part of Wright in regard to the controversy between Williams and Lewis. Why Lewis did not have a legal construction given the agreement referred to by Wright, is left unexplained. Wright made no concealment of the evidence of this alleged partnership; and when this writing is produced in the Mercer Circuit Court, upon inspection, it must be seen that its legal construction or meaning was one of doubt, until settled by this court. If, however, this writing had been produced in the Taylor Court the result of the controversy would doubtless have been the same. Lewis was liable as the surety for Wright for many thousand dollars. Williams had no interest in the stock and was only attempting to aid Wright in his speculations. The money, the proceeds of the bill, was being applied, as Wright and the cashier of the bank both swear, to the payment of liabilities for which Lewis was bound as surety, and not Williams. The cashier says a part of it was

applied to the $1,500 note, and Wright says the balance was applied to the purchase of the negroes and mules, in which Lewis was interested as partner, but really as surety. Now as between Wright and Lewis, the latter may have been the surety only, but this agreement between Lewis and Wright recites that this property, purchased by Wright with Lewis as surety, "is to be taken by Wright to Louisiana, and sold for the best price he can, and paying the purchase money and expenses. If there is any profit, it is to be equally divided between us, or should there be loss to be equally divided between us." The said Wright is not entitled to any interest on the amount advanced. This money in the bill having been advanced by Wright on the purchase of property in which Lewis was to share a part of the profits and bear a part of the loss, if the chancellor had decided that, as between Lewis and Wright, the former was only the surety, but as to those who were on the notes of Wright for the money that purchased this property, they must be regarded as partners, we are not prepared to say that such a judgment would, and we certainly can not, adjudge, with this agreement before us, that Wright and Williams were guilty of fraud in procuring the judgment.

The production of the agreement rather evidences the good faith in which Wright made his statement, than showing a purpose on his part to prepare himself in order to obtain the judgment. Wright had obtained his release in bankruptcy when the alleged compromise was made between himself and Williams. The action by Williams in the bankrupt court was for the purpose of enforcing the collection of a claim, from the payment of which Wright had already been released; and a compromise by which Lewis was made the beneficiary in securing a payment of $1,900 on a claim that was no longer a debt of Wright, and for which Lewis was legally responsible, can not have the effect to release the latter from its payment.

The judgment of the court below is reversed and cause remanded with direction to subject the proceeds of the assigned judgment on Wright in the hands of John Lewis, or so much as may be necessary to pay appellants' debt, first deducting from the amount in his hands, the costs, expenses, lawyers' fees, etc., incurred by him in the prosecution of the appeal from the Mer-

' cer Circuit Court to the Court of Appeals and for further proceedings consistent with this opinion.

*Bramblett, Durrett, for appellant.*

*Bush, Chelf, Lewis, for appellees.*