CASE 8—PETITION ORDINARY—DECEMBER 14.

# Bronson vs. Green.

### APPEAL FROM MADISON CIRCUIT COURT.

1. One who advised and procured a rebel force to camp on the farm of another, and to consume, carry away, and destroy his property, is liable to the owner of such property for its value, and for smart money, in damages.

2. This statement in the bill of exceptions—"defendant then asked to read the deposition of E. F., but the court refused, she being in Madison county, as shown at the bar"—is not an exception to the ruling of the court.

3. The deposition should not have been read, unless filed with the papers of the case before the commencement of the trial. (*Civil Code*, sec. 649.) Had it been so filed, it could have been rejected only on filing written exceptions, specifying objections and noted of record. (*Secs.* 650 *to* 654.)

4. The statement in the affidavit of a witness, alleged to be newly discovered, that he had not communicated the facts to the party till after the trial, is not suffi-

cient, unless the party also state that the facts were unknown to him till after the jury retired.

BURNAM & CAPERTON for appellant.

R. M. & W. O. BRADLEY for appellee.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

This is an action in the nature of trespass, for inciting, advising, and causing an insurgent force to camp at appellee's dwelling, on his farm, destroying his property, consuming his provisions, and taking and carrying away his three mules and three horses. The evidence against appellant consists of his own statements made to some union soldiers, who, having heard he was preparing to entertain some insurgents, went to his house in the night and represented themselves as rebels, and found considerable preparation to entertain some persons. He appeared rejoiced to see them; stated he was looking for them, as a rebel force under Major Steele had been in the neighborhood the night before, and had informed him that a portion of their force would follow the next night. He seemed quite communicative and free in his conversations until some time in the night, when a conflict between the picket-guard of the union soldiers and some others, whom they supposed to be the rebels Bronson had prepared to entertain, and whom they supposed he was expecting, when Bronson seems to have discovered his mistake in supposing them to be rebel soldiers, and said he was mistaken and had said too much.

In these conversations, as the evidence developed, he said he had directed the rebels to Green's; had told them he was an intense union man, and a bitter enemy of the South; that he had some good horses and mules, and they ought to take them.

On the other hand, he introduced several witnesses to show the force under Steele came into Richmond on the opposite side of the town, intended to camp at the late residence of Judge Goodloe; but on arrival at the place, found out that he had sold and left the place; that they then continued their march for the purpose of going beyond Richmond and camp-

ing on the farm of Green; and that they passed through Richmond after dark, probably eight or nine o'clock at night; and as Green lived between Bronson's and Richmond, would reach Green's before Bronson's; that several of the soldiers in this command were from that region, knew the localities and persons, and their political sentiments.

The court, at the instance of plaintiff, instructed the jury, in substance, that if they believed Bronson did advise and incite this command to camp on his place, and advised them to consume his provisions and destroy his property, and to take his horses and mules, that they should find against him, and could give smart money by way of damages, as well as the value of the property so destroyed, consumed, and taken.

And, at defendant's instance, instructed the jury, that, notwithstanding Bronson's conversations and statements that he had so advised and incited said rebel force to · so camp on Green's farm and consume his provisions and destroy his property and carry off his horses and mules, yet if they believed, from the evidence, that, in fact, he did not do so, but that the rebels, without his knowledge and advice, so camped, that then they must find for him.

This was a fair exposition of the law, and left the jury entirely free to determine, from the evidence, the guilt or innocence of the defendant from all the facts before them.

It is proven in this case that these rebel forces divided into squads, the main body camping at Green's; but some staid in Richmond; others went to the dwelling of defendant's son, near Green's. And it is highly probable, at least not improbable, that some squad of these forces was at the defendant's house the night they encamped at Green's; nor does his evidence at all render this impossible or improbable; therefore, if it be conceded that it was determined to camp at Green's before Bronson had any means of knowing they were in the neighborhood, it does not follow that he might not have incited them to carry off the horses and mules of Green, and to commit other trespasses not at first intended, and which might not have been perpetrated had no neighbor advised it; and it is somewhat remarkable, that, in all the evidence offered by

defendant, none of the rebels spoke of any intention to take Green's horses and mules. It is true some of the witnesses say that the habit of this command was to take such horses as they needed from friend and foe. The court, therefore, properly left it to the jury to determine, from all the facts and evidence before them, whether Bronson really did advise these trespasses, or any of them; and the jury having found him guilty, we cannot say the evidence did not justify the finding, or that the evidence in defendant's behalf so strongly preponderates as to authorize our interposition.

Defendant complains of an error of the court in refusing to permit him to read the deposition of his daughter, Mrs. Frances. The only statement or exception in the record as to this is as follows: "Defendant then asked to read the deposition of Emma Frances; but the court refused, she being in Madison county, as shown at the bar."

This is a simple statement of a fact, and not an exception to the ruling of the court.

By section 649, Civil Code, it should not have been read unless filed with the papers of the case before the commencement of the trial. Whether it was so filed does not appear in this record. Had it been filed before the commencement of the trial, it could have been rejected only on filing written exceptions, specifying objections, and noted of record. (*Sec.* 650.)

"No exception, other than to the competency of the witness, or the relevancy or competency of the testimony, shall be regarded, unless filed and noted of record before the commencement of the trial." (*Sec.* 651.)

"The court, on motion of either party, shall decide upon the exceptions before the commencement of the trial." (*Sec.* 652.)

"Errors of the court in its decisions upon exceptions to depositions are waived unless excepted to." (*Sec.* 653.)

"Where the trial is by jury, the swearing of the jury shall be deemed the commencement thereof." (*Sec.* 654.)

In Vanmeter vs. Drake (*MS. Opin., July,* 1856), this court held, that though written exceptions were filed to depositions

before the hearing, that unless decided, and exceptions to the decision were taken, they must be deemed waived.    And in Mullins vs. Smith (*MS. Opin.*, *September*, 1857), it held that when the exceptions are overruled, exception to the decision must be taken to be available in this court.

The obvious propriety of requiring these decisions before the commencement of the trial is to give the party wishing to use the deposition a chance to continue the cause for the purpose of either having the deposition retaken or obtaining the attendance of the witness.

And so it has often been ruled by this court, that, should anything occur before the rendition of the verdict which would authorize a continuance, it must be sought before, else it will be deemed waived after verdict.

Now, as this witness was competent, and the evidence both competent and relevant, it was erroneous to reject the deposition, if it was filed before the commencement of the trial; yet, as there is no exception to the decision of the court thereon, we cannot consider it.    The evidence of Tribble would only be cumulative if obtained; but Bronson does not state in his affidavit that he for the first time discovered this evidence since the trial of the cause, which is essential in every case to get a new trial, because of newly discovered evidence.    Tribble states in his affidavit that he had never before the trial communicated the facts in his knowledge to either Bronson or his counsel; still this does not preclude the possibility of Bronson's knowing through other means that he could prove such facts by Tribble.

There being no available errors presented in this record, the judgment must stand; it is therefore affirmed.