CASE 93—PETITION ORDINARY—NOVEMBER 25.

# Hedges   vs.   Wallace.

APPEAL FROM UNION CIRCUIT COURT.

1.   The purchaser of a lot of hogs in the fall of 1861 is liable for the con-
tract price, although the hogs were purchased for the use of the Con-
federate government; and common reputation in the neighborhood
of what the intention of the purchaser was, in purchasing the hogs,
was not competent even to fix a knowledge of the fact on the seller.

2.   The mere knowledge of the illegal purpose for which goods are pur-
chased will not affect the validity of the contract of sale; but there
must be some participation or interest of the seller in the act itself.
(*Story's Conflict of Laws*, sec. 253.) The authorities show that it
must be a part of the arrangement, and the seller must participate in
the intent to accomplish the illegal act. (*See Nov. No. American
Law Register*, 40 *Phillips vs. Hooker*, and authorities cited; *Hilliard
on Sales*, 376; *Armstrong vs. Tolor*, 11 *Wheat.*, 258; *Doter vs. Earl*, 3
*Gray's Mass.*, 482.)

3.   Where goods are bought from an enemy, even in his own territory, by a
citizen of the United States, the sale is valid, and the price may be
recovered, although the act might be a misdemeanor and the prop-
erty liable as a prize. (*Coolidge vs. Inglee*, 13 *Mass.*, 26.)

HUSTON & HUGHES, CROCKETT & YEAMAN,     For Appellant,
CITED—

1 *Greenleaf's Ev.*, sec. 137.

*Starkie on Ev.*, 33.

4 *Barb.*, 439.

4 *Dana*, 381 ; *Steele vs. Crele.*

1 *Parsons on Contracts*, 441.

7 *Dana*, 59 ; *Smith vs. Crawford.*

I. A. SPALDING,                    For Appellee.

Hedges vs. Wallace.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

This action was brought by appellant against appellees to enforce the collection of two hundred and ninety-five dollars and sixty cents, the price of twenty-eight hogs, weighing gross seven thousand three hundred and ninety pounds, which he alleges he sold and delivered to appellees in the fall of 1861.

In an amended answer, appellees state that they were agents and sub-contractors under one E. G. Sebree, who was a contractor with the Confederate States government to furnish it with hogs, beef cattle, and other supplies for the army, whilst said Confederate government was prosecuting a war against the government of the United States. That appellees, Wallace and Nesbitt, informed appellant that they were purchasing hogs to supply the said Confederate army, and when they purchased his hogs and weighed them, he well knew they were purchased for that purpose.

A verdict and judgment having been rendered against appellant in the court below, he has brought the case to this court by appeal.

Two propositions of law are involved in this appeal which will be considered.

1. Is the mere sale of goods, knowing that the buyer will make an illegal use of them, sufficient of itself to deprive the vendor of the right to recover the price?

2. If the knowledge of the illegal design shall have that effect, is it competent to prove that the general reputation in the neighborhood of the vendor was that the purchasers were buying for such illegal purpose competent evidence to fix the guilty knowledge on the vendor?

As to the first proposition, it is said in *Story's Conflict of Laws, section* 253, after referring to many cases which had undergone judicial investigation, that the result of

these decisions certainly is, that the mere knowledge of the illegal purpose for which goods are purchased will not affect the validity of the contract of sale; but there must be some participation or interest of the seller in the act itself—but doubts whether the doctrine is reconcilable with the sound principles of morality of the common law; and quotes with approbation the illustrative case put by Chief Justice Eyre of the man who sold arsenic to one who he knew intended to poison his wife with it. He would not be allowed to maintain an action upon his contract. A contract is not void merely because it *tends* to promote illegal or immoral purposes. (*Hilliard on Sales*, 376; *Armstrong vs. Toler*, 11 *Wheat.*, 258.)

A contract for the sale of a house and lot is not vitiated by the fact that the vendor knows, at the time of making it, that the vendee intends it for an immoral or illegal purpose. (*Armfield vs. Tate*, 7 *Ired.*, 259.) A sale of goods is not void, although the seller knows that they are wanted for an illegal purpose, unless he has taken part in the illegal purpose. (*Hodgson vs. Temple*, 5 *Taunt.*, 181.) In that case C. J. Mansfield said: "The merely selling goods, knowing that the buyer will make an illegal use of them, is not sufficient to deprive the vendor of his just right of payment." In *Doter vs. Earl* (3 *Gray's Mass.*, 482) the court said: "If the illegal use to be made of the goods enters into the contract, and forms the motive and inducement in the mind of the vendor or lender to the sale or loan, then he cannot recover, provided the goods or money are actually used to carry out the contemplated design. But bare knowledge on the part of the vendor that the vendee intends to put the goods or money to an illegal use will not vitiate the sale or loan, and deprive the vendor of all remedy for the purchase money."

Where goods are bought from an enemy, even in his own territory, by a citizen of the United States, the sale is valid, and the price may be recovered, although the act might be a misdemeanor and the property liable as a prize. ( *Coolidge vs. Inglee*, 13 *Mass.*, 26.)

It will be seen, therefore, that a contract is not void because there is something immoral or illegal in its surroundings or connections, and yet it is equally certain that a contract is void when it is illegal or immoral. It has been held, that where goods were sold to a man who intended to smuggle them and defraud the revenue, and the vendor knew his design, the contract was valid, and the vendor could recover the price.

But where goods were sold to one who intended to smuggle them to defraud the revenue, and the vendor not only knew the intention, but put them up in a particular manner so as to enable the purchaser to carry out his purpose, the contract was held void and the price could not be recovered.

All these authorities show that it must be a part of the arrangement, and the vendor must participate in the intent to accomplish the illegal act. ( *See November number American Law Register*, 40, *Phillips vs. Hooker, and authorities cited.*)

And this court, in *Steel vs. Curle* (4 *Dana*, 381), strongly argues to the same effect, although the point was not directly before the court.

Common reputation in the neighborhood of what the intention of Wallace and his employer was in purchasing the hogs was not competent even to fix a knowledge of the fact on appellant. ( *Farmer vs. Lewis, &c.*, 1 *Bush*, 66.)

It results that the instructions asked by appellant, consistent with the views expressed in this opinion, should

have been given, and those asked by appellees, which conflict with these views, were erroneous. And evidence of the common reputation of the purpose of Wallace and others in purchasing the hogs, should have been rejected.

Wherefore, the judgment is reversed, and the cause remanded, with directions to award a new trial, and for further proceedings consistent herewith.