## Fears v. United Loan & Deposit Bank, et al.

(Decided November 17, 1916.)

### Appeal from Henry Circuit Court.

1. Depositions—Waiver of Exceptions.—Where objections are made to questions and answers as depositions are being taken, and written exceptions filed to depositions, but the parties do not request the trial court to pass upon the exceptions and it does not do so, upon appeal the exceptions will be treated as having been waived by the parties in the trial court.

2. Contracts—Obstructing Justice.—Any contract to stifle or impede the due course of public justice is against public policy, and is illegal and unenforcible.

3. Contracts—Illegal Consideration.—If any part of the consideration for a contract is illegal and vicious, the entire agreement is void.

4. Contracts—When Cannot be Avoided.—A party to a contract, who is innocent of any unlawful purpose in making the contract, and seeks to have it enforced, it can not be avoided by the other party on account of an unlawful purpose which actuated him in making it, and which he did not disclose.

5. Contracts—Contract for Loan of Money.—In a contract for the lending of money, although the lender may have knowledge of the unlawful purpose for which the borrower intends to use it, he can recover it of the borrower, unless the accomplishment of the unlawful purpose entered into the transaction as an inducement or motive for lending the money, or the lender participated in the intent to accomplish the illegal act. Bare knowledge on the part of the lender, that the borrower intends to use the money for an illegal purpose will not vitiate the loan and deprive the lender of all remedy.

6. Contracts—Duress as Plea to Avoid.—Duress will not avail as a plea to avoid a contract, unless the one who is seeking to enforce it or his agent imposed the duress, or the duress was imposed

with his knowledge and was taken advantage of by him to obtain the contract.

7. Contracts—Duress.—Duress by a third person will not avoid a contract made with a party who was without knowledge of it.

8. Contracts—Contract to Compound Offenses.—Where money is paid in performance of a contract to compound a felony, it can not be recovered, as the parties are in equal wrong, and a court of equity will not give relief to either, but will leave them in the position in which they have placed themselves.

9. Contracts—Party to Illegal Contract.—If the parties to an illegal contract are not equally wrong, the less guilty one, though concurring in the illegal act, may have relief, if his concurrence was caused by fraud, duress or undue influence practiced upon him by the other party.

10. Contracts—Duress.—Duress exists where one, by the unlawful act of another, is induced to perform an act or make a contract under circumstances which deprive him of the exercise of his free will.

11. Contracts—When Duress Will Not Avoid.—Generally a contract can not be avoided because of duress imposed upon one, other than the one seeking to avoid the contract, but where a wife is induced to execute a contract through fears aroused by threats made to her to prosecute her husband for a crime, it may be avoided because of the duress.

J. P. HOBSON & SON and J. C. FEARS for appellant.

H. K. BOURNE for appellee, United Loan & Deposit Bank.

BROWN & NUCKOLS for appellee, Elliston.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

J. R. Fears, the husband of the appellant, Maggie Fears, was the master commissioner of the Henry circuit court and as such was the custodian of about two thousand dollars, which he failed to pay over to the persons entitled thereto, and the sureties in his official bond were compelled to pay it for him. One of the sureties was I. W. McGinnis, deceased, and his administrator, the appellee, A. G. Elliston paid of the defalcation the sum of over one thousand dollars. Several months afterward the grand jury found and returned an indictment against Fears, which accused him of the crime of embezzlement growing out of his defalcation as master commissioner. After the prosecution had been continued at one term of the court and another term had arrived, J. R. Fears and his wife, the appellant, Maggie Fears, borrowed seven hundred and fifty dollars from the appellee, the United Loan & Deposit.

Bank, and executed their promissory notes for the loan, and as security for the payment of the notes at maturity, executed and delivered to the bank a mortgage upon a house and lot, which was the property of the appellant and in which she and her husband and family resided. The money, borrowed, was payed to the appellee, Elliston, as administrator of McGinnis, deceased. The appellee, Elliston, and the agent of a surety company, which was, also, a surety in the official bond of Fears, as master commissioner, and which had paid for him one-half of the defalcation, signed a writing, which was addressed to the Commonwealth's Attorney, and requested him to cause the indictment, against Fears, to be dismissed. The Commonwealth's Attorney filed grounds for his action and requested the court to dismiss the indictment, which it did. When the notes, which had been executed to the appellee, bank, by Fears and his wife, became due they were not paid, and the bank instituted this suit to recover judgment upon the notes and the enforcement of the mortgage lien and a sale of the house and lot to satisfy the judgment. The appellant and her husband resisted a judgment upon the notes and the enforcement of the mortgage lien, and plead in defense of the action, that appellant was compelled to execute the notes and mortgage by duress arising from threats of appellee, Elliston, to prosecute the indictment against Fears and to cause him to be put in the penitentiary, unless the sum of seven hundred and fifty dollars was paid to him. It was, further, plead, that the notes and mortgage were executed to obtain the money, which they represent, and that Elliston had agreed in consideration of the money to procure a dismissal of the indictment and an end of the prosecution for embezzlement, and that there was no other consideration for the notes, except to procure the dismissal of the indictment, and that the appellee, bank, at the time it made the loan and furnished the money was acquainted with the purpose for which the money was to be used, and for that reason the notes and mortgage were void, because they were executed as part of the transaction for compounding a felony. The answer of the appellant and her husband was made a cross-petition against the appellee, Elliston, with a prayer that the notes and mortgage be declared void and not enforceable, but in the event the court did not

adjudge them such relief, as against the bank, that they have a judgment against Elliston for the amount which had been paid to him and their costs. The bank replied and denied that it had any knowledge of any duress exercised upon the appellant to procure her to execute the notes and mortgage, and denied that it had any knowledge of the purpose for which the money, for which the notes were given, was borrowed or used, or had in any way participated in procuring the dismissal of the indictment against Fears or in the compounding of a felony, by so doing. The appellee, Elliston, for his answer to the cross-petition denied all the affirmative allegations therein and alleged that the money was paid to him for an assignment of the claim which he held as administrator of McGinnis, deceased, against Fears for the money which he had paid as surety for him and that such sale was made to appellant at the request of her husband. He, also, denied that he had in any way placed any duress upon the appellant for the procurement of the money or had any knowledge of any duress under which she labored. The affirmative allegations of his answer were denied by reply.

After the parties had taken such evidence as they desired upon the issues, the action was submitted for trial and judgment and resulted in a judgment in favor of the bank against appellant and her husband for the sums of the notes and the enforcement of the mortgage lien upon the house and lot to satisfy them, and a denial of any recovery upon the cross-petition against Elliston, which was dismissed. From this judgment the appellant, Maggie Fears, has appealed.

(A) It is insisted that much of the testimony is incompetent and should not be considered, for other reasons. Objections were made to a great deal of the evidence, along, as the depositions were being taken, and written objections were then filed to many questions and answers, and the entire deposition of J. R. Fears. The court did not pass upon any of these objections, nor does it seem that it was ever requested to do so. Section 589, Civil Code, provides that "Errors of the court in its decisions upon exceptions to depositions are waived, unless excepted to." Hence, if the court had been requested to pass upon the objections to the depositions and had done so, and an exception to the decision had not been taken, the decision would not be a question

upon this appeal, because the objection to the evidence and the adverse ruling thereon would, according to the literal language of the Code, have been waived. Hence, in the instant case, the objections having been made, but the parties failing to have the court pass upon the objections and no decision thereon having been made, it must be concluded that the objections were all waived in the court below, and is not a question which can be raised upon appeal. Corn v. Simms, 3 Met. 391; Lewis v. Wright, 3 Bush 311; Weber v. Weber, I Met. 18; Russell's Heirs v. Mark's Heirs, 3 Met. 38; Snedagar v. Kincaid, 22 R. 1347; Bronson v. Green, 2 Duvall 234.

(2) Passing to the merits of the controversy, it appears that the indictment was returned against J. R. Fears, at the January term, 1913, of the circuit court, and at the April term was continued for a reason, which does not appear, and at the September term it was dismissed. We presume that Fears was arrested before the April term and was under bond for his appearance to answer the indictment thereafter. On the 9th day of September, which was during the September term of the court and probably on the day or the day before the indictment was set for trial, the notes and mortgage sued on were executed. On the 10th day of September, the request of the sureties in the official bond of Fears for a dismissal of the indictment was signed, and on the 11th day of September the requests were filed in court and the prosecution dismissed. It is not pretended that any officer or director of the appellee, bank, had any actual knowledge, at the time the loan was made and accepted, of the purpose of the obligors, in the notes, in borrowing the money, or what was intended to be done with it. The place of business of the bank is at Campbellsburg, while the appellant and her family resided at New Castle. Both towns are in the same county, but the distance between them is not shown. It is insisted, however, that H. K. Bourne, an attorney through whom it is claimed the loan was consummated, was an attorney for the bank, and that he had knowledge of the purpose of the loan and what was intended to be done with the money arising from it; that Bourne was acting as attorney for the bank and made the loan for it; that he knew that the money was to be paid to Elliston for the purpose of stifling the prosecution and participated in the intent to accomplish the unlawful

purpose by preparing the notes and mortgage and, also, a check to Elliston, upon the bank for the money, to be signed by appellant. It is not claimed that the bank participated to any extent in the intent to secure the stifling of the prosecution, except the claim that it is bound by the acts and knowledge of Bourne. It is not pretended, that the bank was guilty of any act of coercive nature, or anything which would have or did place the appellant in duress or caused her to execute the notes and mortgage against her will or otherwise. The contention of appellant is, that Elliston had agreed, in consideration of the sum of seven hundred and fifty dollars to be paid to him, that he would cause the prosecution against Fears to be dismissed and that was the entire consideration which appellant was to receive for the money; that the bank, through its attorney, Bourne, knew of this vicious contract and furnished the money for the purpose of enabling the prosecution to be compounded, and participated in the intent to compound the felony, as above stated. It may be conceded, that any contract to impede the due course of public justice is illegal and unenforceable. As was said in Swan, etc. v. Phillips, etc., 8 B. M., 97, "It is against public policy to permit individuals to settle and adjust offences of a criminal nature, the punishment of which is deemed essential to the general welfare. The effect of such contracts is to encourage the commission of crime, and the law denounces them as impolitic and illegal." It has been held, that, if any part of the consideration for a contract is illegal and vicious, the entire agreement is void. Kimbrough v. Lane, 11 B. 558; Gardener v. Maxey, 9 B. M. 90; Donallen v. Lennox, 6 Dana 91; Woods v. McCann, 6 Dana 366; Brown's Admrs. v. Langford's Admrs., 3 Bibb 500; McGill's Admr. v. Burnett, 7 J. J. M. 641; Averbeck v. Hall, 14 Bush 515. The contract between the appellant and her husband and the appellee, bank, in the instant case, however, was not to compound a felony, but the contract was solely to lend to the appellant and her husband the sum of seven hundred and fifty dollars, which they agreed to repay according to the tenor of the notes, and to secure the payment by the mortgage. It is not pretended that the bank had any interest in or desired that the felony be not punished. Where a party to a contract, who is innocent of any unlawful purpose in making the con-

tract, seeks to have it enforced, it cannot be avoided by the other party on account of the unlawful purpose, which actuated him in making it, and which purpose he did not disclose. Steele v. Curle, 4 Dana 381. In Hedges v. Wallace, 2 Bush 442, it was held, that in a case of a vendor and vendee, that although the vendor may have knowledge of the unlawful purpose of the vendee in purchasing the property, and the unlawful purpose to which he intends to apply it, the contract for the payment of the purchase price is not void or unenforceable, at the suit of the vendor, unless the accomplishment of the unlawful purpose entered into transaction as an inducement or motive for the sale, or the vendor participated in the intent to accomplish the illegal act. In the last mentioned case, the court quoted with approval the following excerpt from the opinion in Doter v. Earl, 3 Grays, Mass. 482:

"If the illegal use to be made of the goods enters into the contract, and forms the motive and inducement in the mind of the vendor or lender to the sale or loan, then he cannot recover, provided the goods or money are actually used to carry out the contemplated design. But, bare knowledge on the part of the vendor that the vendee intends to put the goods or money to an illegal use will not vitiate the sale or loan, and deprive the vendor of all remedy for the purchase money."

With relation to the claim by appellant that she was compelled to execute the notes and mortgage through duress imposed upon her, as before said, it is not claimed that appellee, Bank, was in any way responsible or caused any duress, under which she was laboring. The claim is, that the duress arose from the threats and actions of appellee, Elliston, who it was alleged, had threatened to cause her husband, J. R. Fears, to be convicted and confined in the penitentiary, and had employed attorneys to prosecute him for the crime of embezzlement. It is well settled, that duress will not avail as a plea to avoid a contract, unless the one, who is seeking to enforce the contract or an agent of his, imposed the duress, or that it was done with his knowledge and was taken advantage of by him for the purpose of obtaining the contract. As said in Ely v. Hartford Life Insurance Co., 128 Ky. 808, "Duress by a third person will not avoid a contract made with a party who was not cognizant of it." Long v. Branham, 30 R. 352, 99 S.

W. 271; Hall v. Hall, 118 Ky. 656, 82 S. W. 269, 9 R. C. L. 729; Fightmaster v. Levy, 13 R. 412. It is not shown or contended that any officer, director or agent of the appellee, Bank, had any knowledge of any duress having been imposed upon the appellant, which induced the execution of the notes and mortgage, but instead, the proof affirmatively shows the contrary.

The evidence relied upon to show a guilty knowledge and participation on the part of the appellee, Bank, in the transaction, which resulted in the borrowing of the money and the payment of it to Elliston, and which it is insisted constituted a stifling and impeding of the due execution of the criminal laws, is as follows:

J. R. Fears testifies that some time previous to the finding of the indictment against him, that Elliston came into his office, accompanied by H. K. Bourne, and there requested Bourne to ask him what he, Fears, was going to do about paying the money which Elliston had paid out for him upon his bond. Fears answered that he did not know, that he was not in a condition to pay it then. Elliston then said to Bourne, to say to Fears, that unless he and his wife would give him a mortgage upon her property for one thousand dollars or pay him the money, that he would indict him when the Henry circuit court should sit. Fears said that he could not pay the money then, but to wait until court convened, and in the meantime it might be adjusted. Elliston then said, "Say to him, that unless I get one thousand dollars or a mortgage or the money secured, that I will indict him, and grief and tears will not avail anything with me." Fears further stated, that Bourne was Elliston's attorney, although he does not state any fact or circumstance, other than this, to indicate that such relation existed between Elliston and Bourne. Elliston and Bourne denied that such conversation occurred, or that anything was said about a mortgage by Fears and his wife, or that Elliston made any threat to indict Fears, or made a threat of any kind. Elliston testifies that he and Fears were not on friendly relations and he requested Bourne to go with him into Fears' office for that reason, and because, he would not trust himself to have any conversation with Fears, unless there should be some other person present; that Bourne was not his attorney at all; that he requested of Fears to know whether he intended to repay the sum he had paid for

him; that Fears said that he was not in a condition to pay it, and that he, Elliston, said that he would insist upon Fears paying it, and that this was all that transpired. Bourne corroborates Elliston, except that he says that Elliston said to Fears "that he had better pay it." Fears further testified that he had no further communications with Elliston, but during the September term of the court, after the indictment in January, that Bourne frequently mentioned the matter to him and suggested, that if he would pay the money or secure by mortgage to Elliston the sum of five hundred dollars, that the indictment would be dismissed; that afterward he was informed that seven hundred and fifty dollars or a mortgage for that amount would be necessary; that he was willing to give the mortgage, if he could get the consent of his family; and that finally his wife, the appellant, agreed to execute the mortgage; that Bourne prepared the notes and mortgage and a check, payable to Elliston, to be signed by the appellant, Mrs. Fears, in his, Fears' office; that he did not know that the mortgage was to be given to the bank until Bourne prepared it. He, also, stated, that in the transaction with the bank that Bourne was the attorney for the bank, but he does not state any fact or any circumstance which would indicate that such was the fact or that he had knowledge of such relation existing between the bank and Bourne. Morgan Fears, a son of the appellant, testified that on the day, or the day before, the notes and mortgage were executed, that Bourne said to him, that the indictment would be dismissed if the appellant would execute the mortgage. The depositions of the president, vice-president and cashier of the bank were taken, and they disclose that these officials did not know that Fears had been indicted, but proved that Bourne, for several years past, had been the attorney for the bank when it was engaged in any litigation, but that he was not retained regularly by it, but only acted for it, when employed, upon special occasions to do so. Bourne's testimony was to the effect, that he had been employed and had been paid fees by the Bank in two suits in which it had been engaged within the previous five or six years; that he was not an attorney for the bank except when it had litigation, and had no authority to represent it regularly and only when it requested him to do so; that in the transaction in controversy he

was not acting as attorney for the bank, but he was attorney for Fears and his wife; that J. R. Fears requested him to interview Elliston and ascertain whether he would sell the claim, which he as administrator, held against him, to appellant for seven hundred and fifty dollars; that appellant would give mortgage upon her property and procure the money for that purpose, and Elliston agreed to accept the seven hundred and fifty dollars for the claim; that he informed J. R. Fears of Elliston's acceptance of the proposition; that Fears then requested him to assist him in borrowing the money; that he interviewed the cashier of the appellee, Bank, upon the subject by telephone and informed him that the appellant desired to borrow from it seven hundred and fifty dollars, and to secure its payment by a mortgage upon her house and lot, which was worth from twelve hundred to fifteen hundred dollars; that the cashier agreed to lend the money to the appellant, if the title to the property was good; that he as attorney for Fears examined the title and at his request prepared the notes and mortgage and a check upon the bank, payable to Elliston, for the money; that Fears took away the papers, and the notes and the mortgage was returned to him executed; that the check was not returned to him; that he caused the mortgage to be recorded and sent the notes to the bank, and directed it to credit the appellant with the seven hundred and fifty dollars; that he did not inform the cashier of the bank, who made the loan for the bank, for what purpose the money was to be used. He, furthermore, denied that he had ever had any conversation with Morgan Fears in regard to the transaction, or with the appellant, and knew nothing of her laboring under any duress or any duress imposed or attempted to be imposed upon her in the execution of the notes and mortgage. He further denied that he ever suggested to Fears that if he would pay or give a mortgage for five hundred dollars, or any other sum, that the indictment would be dismissed.

These facts do not show any agency for the bank by Bourne in the transaction, and hence the bank was not bound by any knowledge which Bourne may have had in regard to it. Being without knowledge of the claimed duress or of the purpose for which the borrower intended to use the money, its contract cannot be voided either on account of duress imposed upon the appellant

by others, under which she may have executed the notes and mortgage, or on account of any unlawful purpose for which the money was borrowed and used and which was not disclosed to it by appellant or other persons, and hence could not, in lending the money, have participated in the intent to accomplish any unlawful purpose designed by the borrower to be effected by the use of the money, and neither could the compounding of a felony have entered into the contract on the part of the bank or constituted any part of its motive or inducement for the lending of the money.

(3) The judgment denying any relief against appellee, Elliston, upon the cross-petition of the appellant, remains to be considered. In considering this branch of the controversy, the position of the appellee, bank, can be entirely eliminated from any connection with it, as the money, when deposited to the credit of the appellant, was her property, and having paid it to appellee, Elliston, can she now recover it from him? As before stated, it is contended for appellant, that the only consideration for the payment of the money to Elliston was an agreement by him, in consideration of the payment to him of the money, to procure the dismissal of the indictment, and thereby to shield the husband of the appellant from the punishment, which he should have received for the commission of a crime, which, it is to the welfare of the public, should be punished. This character of contract is in contravention of public policy and is void. It cannot be ratified and is unenforceable at the suit of either party to it. According to the contention of appellant, this contract was an executed one, the money having been paid and the indictment procured to be dismissed, were all the things to be performed under the contract between appellant and Elliston. The common law rule and the one applied to such transactions is, that where money is paid and personal property transferred in performance of such contract, neither the money nor the property can be recovered, although the other party should refuse to perform his part of the contract, the policy of the law being that the parties being in equal wrong, that a court of equity will not give aid to either of them, but will leave them just as it finds them and in the position in which they have placed themselves. Chapman & Wife v. Haley, 117 Ky. 1004; Central Trust & Safety Deposit Co. v. Respass,

23 R. 1905; Smith v. Richmond, 24 R. 1117; 70 S. W. 846; Devazac v. Deiter, 12 R. 599; 6 R. C. L. 761; Am. & Eng. Ency. of Law Vol. 15, 1001; Green v. Hollingsworth, 5 Dana 173; Norris v. Norris' Admr., 9 Dana 317; Gray v. Roberts, 2 A. K. M. 209; American National Bank v. Madison, 144 Ky. 52. The contention on the part of the appellant being, that she paid the seven hundred and fifty dollars to appellee, Elliston, upon the sole consideration, that he would procure the indictment against her husband to be dismissed, and the evidence tending conclusively to show that was her purpose and intention, whatever may have been the motive of Elliston in receiving the money, it would seem that she falls absolutely within the purview of the principle above enunciated and that a court of equity cannot grant her any relief, except she be of a class hereafter mentioned. On account of the illegal and vicious nature of such contracts, the courts consistently refuse to either enforce them when executory, or to rescind them and restore the *statu quo,* between the parties to them, when they have been executed, but will leave each of them to the consequences of his own wrong doing. However, if the parties to an illegal contract are not equally wrong, or as is termed, in *pari delicto,* the less guilty one, though concurring in the illegal act, may have relief, if his concurrence was caused by some fraud, duress or undue influence practiced upon him by the other. Anderson's Admr. v. Meredith, 82 Ky. 564; Harper v. Harper, etc., 85 Ky. 160; Louisville Insr. Co. v. Hoffman, etc., 20 R. 2016; 2 Pomeroy's Equity, Sections 942-943; 6 R. C. L. 834. It is insisted, in the instant case, that the duress practiced upon appellant by Elliston entitles her to relief from the consequences of her act. Duress is where one, by the unlawful act of another, is induced to make a contract or perform some act under circumstances which deprive him of the exercise of his free will. It is a species of fraud, wherein compulsion takes the place of deception. While generally, a contract cannot be avoided, because of duress imposed upon some person, other than the one seeking to avoid the contract, it is well settled, that if a wife is induced to execute a contract, through being deprived of the free exercise of her will, through fears aroused by threats made to her to prosecute her husband for a crime, this is a duress, which will avoid a contract. In this case then two ques-

tions arise. One is: Was appellant caused to pay the money, which she received for the notes sued on, to Elliston, by duress, as above described? The other is: Did Elliston or his agent impose the duress upon her, or knowing of the duress under which she was laboring, did he take advantage of it to obtain the money? It must be conceded, that from the fact that he was before the grand jury at the time, the indictment was found, and that he thereafter employed counsel to assist in the prosecution of Fears, and that as soon as he received the check for seven hundred and fifty dollars, that he was willing for the indictment to be dismissed and the prosecution to end, and requested the Commonwealth's Attorney to dismiss it, his conduct bears strong earmarks of the truth of the averment, that he had entered into an illegal contract to compound the crime and was attempting to coerce money out of Fears by means of the prosecution. However, there is no denial of the guilt of Fears of the charge in the indictment, as he is a lawyer and testifies that he entertained no hope of an acquittal, and Elliston was within his rights, if he was in good faith seeking the conviction of Fears. Neither, can it be imputed to him, as a wrongful act, that he was willing to receive the money or a part of it, which Fears owed him. Elliston deposes that he never at any time made any threat of prosecution or conviction of Fears; that he never made any proposition to receive payment of the debt, and in consideration thereof to cease the prosecution; that no one ever made any such proposition to him, nor he to any one; that he never entered into any such contract nor proposed any such; that he never made any threat, to prosecute or secure the conviction of Fears, to appellant or her husband; that he did not know of any arrangement being made by appellant or her husband to obtain the money paid to him. There is not any proof from any source, that Elliston ever made any threat to prosecute or imprison Fears, except the statement of Fears heretofore mentioned, in the truth of which, he was contradicted by Elliston and Bourne. There was not any evidence to the effect, that any contract or agreement was made by Elliston with appellant, either in person or by agent, that he would induce the dismissal of the indictment in consideration of the payment to him of the money. Elliston corroborates Bourne in the statement, that Bourne bore an of-

fer from Fears to him, to the effect that appellant would
give him seven hundred and fifty dollars for the claim
which he held against Fears, and that he accepted the
proposition and that was the pretense upon which the
money was paid to him. It appears, that as soon as he
received the check, that he assigned the claim which he
held against Fears, to appellant, and delivered it to
Fears' attorney. Bourne testifies that he told Fears
while the negotiations were in progress, that Elliston
would not lend his aid to stopping the prosecution and
that he would have to look to the attorney for the Com-
monwealth to secure that relief. He, also, testifies that
Fears said that he would look to the Commonwealth's
Attorney to dismiss the indictment. Probably that of-
ficial was not willing to do it until the debt should be
satisfied. Elliston explains that the reason he signed
the request for the indictment to be dismissed was, that
his own attorney approached him with the statement,
that the Commonwealth's Attorney desired his signa-
ture to the request, and that he acceded to it. Elliston
testifies that he did not enjoy friendly relations with the
Commonwealth's Attorney at that time, and hence it
cannot be supposed that he influenced the determination
of the attorney to enter the *nolle prosequi* or that he had
undertaken to do so. The evidence is very convincing
that appellant did not desire to execute the notes and
mortgage, and that she was apparently laboring under
much distress of mind, at the time, but there is not a
particle of evidence that this contract was caused by
any act or word of the appellee, Elliston, or any agent
of his, or that he knew of her condition of mind or took
any advantage of it to obtain the money. Her distress
seems to have arisen from representations made to her
by her husband and son, and their importunities and
demands. Her son, however, who testifies that he said
to his mother, "that she just had to execute the mort-
gage," says that he assured her, that his father's attor-
neys had advised him that the mortgage could never be
enforced, and that she was so advised, at the office,
where she executed the notes and mortgage, and that
she never consented to execute the mortgage until she
was so advised, and he expressed the opinion, that she
would never have executed it, if she had not believed that
it was unenforceable. Hence, whether a contract between
appellant and appellee, Elliston, to the effect, that in

consideration of the payment to him of the seven hundred and fifty dollars by appellant, that he would cause the indictment against her husband to be dismissed, can be implied from the facts and circumstances or not; it is certain that she paid the money upon that consideration, and if she was induced to pay the money by any duress imposed upon her, it was not caused by Elliston nor his agents, and the payment, as well as the receipt of the money, for such a purpose being illegal and contrary to public policy, equity will not afford any relief.

The judgment is therefore affirmed.