## Dalton's Committee v. Dalton.

(Decided December 6, 1916.)

### Appeal from Logan Circuit Court.

1. Appeal and Error—Finding of Chancellor.—Where the proof is contradictory and the mind is left in doubt, the finding of the chancellor upon a question of fact will not be disturbed.

2. Appeal and Error—Failure to Pass on Exceptions to Depositions—Waiver.—Where a party to an action filed exceptions to depositions, but failed to have the circuit court pass upon the exceptions, they will be treated as having been waived, and the question of their validity cannot be raised upon appeal.

3. Fraud—Undue Influence—Insane Person—Evidence.—A charge of fraud and undue influence in obtaining a note is not sustained by proof that the maker was adjudged to be of unsound mind four years after he executed the note.

4.   Husband and Wife—Insane Person.—An insane person is liable for the support of his wife to the same extent as he would be, if sane.

W. V. PERRY and R. W. DAVIS for appellant.

BROWDER & BROWDER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

George F. Dalton and Lizzie T. Dalton were married in 1893. They resided upon a small tract of land, containing about six acres, near Keysburg, in Logan county, upon which there was a residence. This home place belonged to the husband. He also owned a tract of sixteen acres lying nearby.

On March 7th, 1903, George F. Dalton executed a note to his wife for $600.00, and secured its payment by simultaneously executing to her a mortgage upon the six-acre tract.

In March, 1907, George F. Dalton was adjudged to be of unsound mind, and was sent to the Western State Hospital, at Hopkinsville, for treatment, where he remained until late in 1913. On October 30th, 1913, Lizzie T. Dalton brought this action upon the note, and to enforce her mortgage lien. About the time the suit was filed, Dalton was dismissed from the State Hospital; and, Harry Borders having been appointed his committee, he filed an answer contesting Mrs. Dalton's right to a judgment, alleging (1) that George Dalton was mentally incompetent to know the effect of his act when he signed the note of March 7th, 1903; (2) that there was no consideration for said note except the sum of $100.00, which Mrs. Dalton had expended in the improvement of the house; (3) that the note had been procured by fraud and undue influence; and, (4) he asserted a counterclaim for $638.50 for rents collected by Mrs. Dalton between 1907 and 1913, the period of her husband's confinement in the State Hospital.

The circuit court dismissed the counterclaim; gave judgment upon the note, and enforced the mortgage lien. From that judgment George Dalton's committee prosecutes this appeal.

1. Upon the issue of George Dalton's competency, the proof is quite conflicting. While it appears that he was never a bright man, he had sufficient ability to attend to the ordinary business of life, and no one

seemed to question his powers in that respect until shortly before he was sent to the State Hospital in March, 1907, four years after he executed the note.

Giving due weight to the finding of the chancellor upon a question of fact, as we should do in cases of doubt, we are not inclined to disturb the judgment upon this ground. Byassee v. Evans, 143 Ky. 415; Kirkpatrick's Exr. v. Rehkoph Saddlery Co., 144 Ky. 129; Salyer v. Hawkins, 147 Ky. 487; Norris v. Isaacs, 149 Ky. 709; Wathen v. Wathen, 149 Ky. 504; Bond v. Bond, 150 Ky. 392; Salmon v. Martin, 156 Ky. 309; McDowell v. Edward's Admr., 156 Ky. 475.

2. It was insisted that Mrs. Dalton was unable financially to lend her husband as much as $600.00; and, this is the substance of the plea of no consideration.

It appears, however, without contradiction, that her father, W. D. Rust, died in 1900, leaving her $666.00 as her portion of his estate, which was paid to her by E. L. Rust, executor of her father's estate, prior to March 7th, 1903. As early as October 8th, 1894, E. L. Rust had loaned George Dalton $200.00, secured by a mortgage upon the six-acre tract, above referred to, and when E. L. Rust came to pay his sister, Mrs. Dalton, her share of her father's estate, he assigned to her in part payment thereof, George F. Dalton's lien note, above referred to, which, at that time, with interest, amounted to $283.75. The executor paid her the balance of her patrimony in money, and Mrs. Dalton testified that she turned over practically her entire patrimony to her husband, for which he executed the note and mortgage in question. To the extent that Mrs. Dalton furnished the money to pay off the note given in 1894, she was entitled to be subrogated to the benefit of the mortgage given to secure its payment. Coleman v. Frazer, 3 Bush 309.

While no attempt was made to meet the testimony of E. L. Rust and Mrs. Dalton, it is insisted that Mrs. Dalton's testimony was incompetent under subsection 1 of section 606 of the Civil Code, she being the wife of the defendant against whom she testified; and, that E. L. Rust's testimony was incompetent because he remained in the room, as the representative of his sister, after a separation of witnesses had been asked, and while Mrs. A. D. Dalton, the mother of George Dalton, testified. Exceptions were filed to these depositions, upon the grounds above indicated, and it is insisted that the court

erred in not sustaining these exceptions. In view, however, of the fact that the appellant failed to have the court pass upon his exceptions to this testimony, and no decision thereon was made by the court, we are compelled to hold that the objections were all waived in the court below, and consequently, that the question of their validity cannot be raised upon appeal. Weber v. Weber, 1 Met. 18; Russell's Hrs. v. Mark's Hrs., 3 Met. 38; Corn v. Simms, 3 Met. 391; Bronson v. Green, 2 Duv. 234; Lewis v. Wright, 3 Bush 311; Snedager v. Kincaid, 22 Ky. L. R. 1347, 60 S. W. 522; Fears v. United Loan & Deposit Bank, 172 Ky. 259.

The exceptions to the depositions of E. D. Moseley likewise were never acted upon by the court, and come within the rule above announced.

3. The charge of fraud and undue influence is substantiated by no proof except such as might be inferred from George Dalton's weak mentality, above referred to, and needs no further consideration.

4. It appears, without contradiction, that during the seven years that George Dalton remained in the State Hospital his wife lived at home, rented out the sixteen acre tract, kept up the place, paid the taxes and other expenses, including the premiums upon George Dalton's life insurance policy, and that she had left a surplus of $221.62, which was necessarily expended by her, in living, during her husband's absence. During all this time there was no committee for George Dalton, and no objection was made to her living in the home and caring for the property; on the contrary, it seems to have been considered entirely proper and necessary that she should do so. Moreover, although George Dalton became insane, he was still liable for the necessaries of his wife, to the same extent as before, and recovery may be had against his estate for the reasonable value of supplies furnished to her during the period of his lunacy. 21 Cyc. 1217; 22 Cyc. 1179; Shaw v. Thompson, 16 Pick. 198, 26 Am. Dec. 655; Read v. Legard, 6 Exch. 636, 15 Jur. 494, 20 L. J. Exch. 309; Pearl v. McDowell, 3 J. J. M. 658, 20 Am. Dec. 199; Coleman v. Fraser, *supra;* Norman v. Central Lunatic Asylum, 25 Ky. L. Rep. 1848, 79 S. W. 189.

There was no merit in the counterclaim, and the circuit court properly disregarded it.

Judgment affirmed.