## American National Bank, et al. v. Madison, et al.

(Decided June 8, 1911.)

### Appeal from Warren Circuit Court.

1. Deeds—Words of Purchase—In conveying land by deed where the words "bodily heirs" and "children" are used synonymously they are not words of limitation, but words of purchase.

2. Deed to Daughter—Life Estate—Remainder to Children—A conveyance of land by a father and his wife, to their daughter reciting that "the parties of the first part" in consideration of love and respect they have for their daughter, Josephine, and her children, have this day, bargained and sold * * * and convey to the parties of the second part, a certain tract of land, describing it, to have and to hold unto the said Josephine and

her bodily heirs, passed a life estate in the land to Josephine and a remainder in fee to her children.

3. Note—Consideration—Dismissal of Prosecution—Notes executed by a mother in consideration of the dismissal of a prosecution for embezzlement against her son was a compounding of a felony and, therefore, an unlawful contract and are not enforceable.

GRIDER & HARLAN for appellants.

BRADBURN & BASHAM for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Fonzo Madison, a young man who had been employed for a number of years by W. S. Claypool & Co., hardware merchants of Bowling Green, Kentucky, was charged with being short in his accounts. He admitted an indebtedness to the firm of $3,500, and surrendered certain personal property which he owned which, when sold, reduced the shortage to $2,500. After some negotiations, his father, J. R. Madison, and his mother, Josephine Madison, executed to Claypool & Co. five promissory notes for $500.00 each, due in one, two, three, four and five years, and to secure same gave a mortgage upon the farm upon which they lived. The notes were discounted by Claypool & Co. to the American National Bank before maturity. When the first note fell due it was not paid. Suit was brought upon it and a foreclosure of the mortgage sought. Josephine Madison and her husband, J. R. Madison, answered, admitted the execution and delivery of the notes and mortgage, claimed that the notes were obtained by duress, that there was no consideration for the signing of the notes further than the agreement on the part of Claypool & Co. not to prosecute their son, and that because thereof they were not bound thereon. They made their answer a cross-petition against Claypool & Co. and asked judgment against them for such sum as the bank might recover against them. The children of Josephine and J. R. Madison filed their petition, asking to be made parties, and claimed that the land described in the petition and mortgage was not the absolute property of their mother, Josephine Madison, but that she had only a joint estate with them therein, or else, a life estate with remainder to them. Issue was joined upon the questions of fact raised by the answer of Josephine and J. R. Madison, and also

upon the question of title or ownership to the land. Up-on consideration the Chancellor held that Mrs. Josephine Madison had only a life estate in the mortgaged land, with remainder to her children. He found that the bank was an innocent holder of the notes by reason of its pur-chase thereof before maturity without notice of any in-firmity, and therefore directed a sale of the life estate of Josephine Madison in the land to satisfy said notes. He further found that the notes were executed by Josephine and J. R. Madison to prevent their son from being prose-cuted for embezzlement, and, on the cross-petition of Josephine and J. R. Madison, he gave them a judgment against Claypool & Co. for such sum as the bank might realize from a sale of the life estate of Josephine Madison in the mortgaged land. Being dissatisfied with this find-ing and judgment, the bank and Claypool & Co. prosecute this appeal.

We will consider first the character and extent of Josephine Madison's title to the land in question. She acquired it by deed from her father and mother, George W. Campbell and wife, and in said deed we find the fol-lowing recitations:

"This indenture, made and entered into this 19th day of February, 1904, by and between George W. Campbell and Hester T. Campbell, his wife, parties of the first part, and Josephine E. Madison, formerly Campbell, and her bodily heirs, parties of the second part, * * *

"Witnesseth: That the parties of the first part for and in consideration of the love and respect which they have for Josephine E. Madison, who is their daughter, and her children, have this day bargained and sold * * * and convey unto the parties of the second part a certain tract or parcel of land * * * To have and to hold unto the said Josephine E. Madison and her bodily heirs."

What estate were George W. Campbell and his wife attempting to give to their daughter? This must be de-termined from a consideration of the language used in the deed.

In Bowe et al v. Richmond et al., 109 S. W., 359, this Court, speaking through Judge Settle, said:

"We know of no better rule of construction than that announced by Judge Kent in Jackson v. Meyers, 3 Johns (N. Y.), 388, 3 Am. Dec., 504: 'The intent, when appar-ent and not repugnant to any rule of law, will control

technical terms; for the intent and not the words is the essence of every agreement. In the exposition of deeds the construction must be upon the view and comparison of the whole instrument, and with the endeavor to give every part of it meaning and effect.' ''

The grantors in this deed state that, in making the conveyance, they were moved by the love and respect which they had for their daughter, Josephine, and her children. Several, if not all of them, were living at that date. In the caption of the deed Josephine E. Madison and her bodily heirs are made parties, and the habendum clause is to Josephine Madison and her bodily heirs for-- ever. The words "bodily heirs" and "children" are evidently here used synonymously, "bodily heirs" having the same meaning as "children." Where they are so used they are not words of limitation but of purchase. This Court has many times been called upon to construe wills or deeds in which the use of the words "bodily heirs" and "heirs of her body" have been employed. In some instances they have been held to be words of limitation and in other words of purchase, the court being governed in each instance by the intention of the parties as gathered from the entire instrument. As said by Judge Cofer, in the case of Davis v. Hardin, etc., 80 Ky., 672,

"The object of all construction is to discover and ef-- fectuate the intention of the person whose writing is to be construed, and while technical rules may aid in many cases in accomplishing the result sought, they are not to be followed when the court is satisfied, from an examination of the instrument, that to follow the rule is to defeat the intention.''

The intention is gathered from the language or words of the writing, and this language should always be read in the light of attending circumstances and the relation of the parties to the contract.

When thus considered it is apparent that the grantors in the case under consideration were wanting to provide for their daughter and her children a home, which she should enjoy to the fullest extent during her life, and they likewise desired to make provision for her children. This purpose can only be effectuated by construing the language used to create an estate for life in the wife, with remainder to her children. To hold that the language used created a joint tenancy or joint ownership among their daughter and her children would be to defeat the evident aim and intent of the grantors.

In Foster v. Shreve, 69 Ky., 519, the granting clause in the deed under consideration was to Susanna Rogers and her present heirs. In determining what estate Susanna Rogers took, this court said,

"To give to the deed any operation as to those persons designated therein as the present heirs of Mrs. Rogers, by which term we do not doubt the grantor intended to include the four children of his daughter, Mrs. Rogers, they must be construed to take in remainder," etc.

In Fletcher v. Tyler, 92 Ky., 145, the deed under consideration contained this language:

"This indenture made and entered into this the 28th day of May, 1851, by and between O. F. Stirman of one part and Chloe Ann Fletcher and the heirs of her body by Woodson Fletcher, upon her begotten * * * do hereby sell and convey to Chloe Ann Fletcher and the heirs of her body aforesaid," etc.

In this deed it was held that Chloe Ann Fletcher took an estate for life, with remainder to her children.

In Webb & Harris v. Holmes, 42 Ky., 404, the court was called upon to construe the following deed:

"This indenture, * * * between Henry Crist and Rachael, his wife * * * of the one part and Francis and Sarah Thomas * * * of the other part, witnesseth, that for the love and good will for them and their children do hereby convey," etc.

It was held that the mother took a life estate and her children the remainder.

In Bodine's Admr. v. Arthur, etc., 91 Ky., 54, the language of the deed was,

"To have and to hold unto the said Hettie E. Bodine, wife of said B. W. Bodine, and to her children by him begotten forever."

This was held to create in Mrs. Bodine a life estate, with remainder to her children.

In McFarland v. Hatchett, 118 Ky., 423, the language of the deed under consideration was very like that before us, and in an exhaustive opinion, in which all of the authorities were collated and reviewed, it was held that the mother took a life estate, with remainder to her children.

We are of opinion that the Chancellor correctly held, in the case at bar, that Josephine Madison took a life

estate in the land in question, and that her children own the remainder in fee.

The uncontradicted evidence shows that the bank purchased these notes before maturity and without notice of any infirmity, and hence the Chancellor correctly directed judgment against the makers thereof.

The only remaining question is, were Josephine Madison and her husband entitled to a judgment against Claypool & Co. for any sum which the bank might realize out of a sale of her life interest in the land. It is averred by Josephine Madison that the sole consideration for the execution of these notes was the compounding of a felony. She charges that she was coerced into their execution by Claypool with the threat that he would prosecute her son for embezzlement if she did not do so. The consideration, then, according to her plea and evidence, for the execution of these notes was the compounding of a felony. Accepting her plea and testimony as true, is she entitled to any relief whatever?

In Swan v. Chandler & Phillips, 47 Ky., 97, (8 B. Mon.), it is held that,

"Any contract to impede the due course of public justice is illegal. It is against public policy to permit individuals to settle and adjust offenses of a criminal nature, the punishment of which is deemed essential to the general welfare. The effect of such contracts is to encourage the commission of crime, and the law denounces them as impolitic and illegal."

And in Gardner v. Maxey, 48 Ky., 90, (9 B. Mon.), it is held that the compounding of a prosecution for a felony "or other public offense, or an agreement to suppress evidence in a judicial proceeding, is illegal as being against public policy, subversive of the end and object of the laws, and injurious to the morals, good order and safety of society," and that a contract based upon such consideration is illegal, vicious and void.

In Miller v. Payne, an abstract opinion in 7 Rep., 287. it is held that a contract, "executed in consideration of the obligee's promise to forbear to prosecute the obligor's son is against public policy and void."

And in Kimbrough v. Lane, etc., 74 Ky., 556, (11 Bush), it is held that:

"Contracts having for their consideration an agreement to stifle a criminal prosecution are void, because

they are against the policy of the law, which will not per-
mit an injury to the public to be made the subject of
private agreements, whereby the redress of the public
wrong may be hindered or defeated.''

In each of the cases from which we have quoted the
contract was the outgrowth of an agreement made prior
to the institution of the criminal proceedings, or while
they were pending, whereby, in consideration of the
agreement to pay a certain sum, the prosecution was
dropped and not pressed. These cases cannot be dis-
tinguished from the case at bar. Appellee's son stood
charged with the crime of embezzlement. She and her
husband were anxious to have the prosecution dropped,
and with a view of defeating the ends of justice and pre-
venting any inquiry into or investigation of this ques-
tion, J. R. Madison sought a member of the firm of Clay-
pool & Co. with a view of adjusting the matter. His
interview resulted in a meeting between Mrs. Josephine
Madison and W. S. Claypool, with result that the notes
and the mortgage in question were executed, and no
criminal proceeding was instituted against the son. She
did not want to pay the debt. Her only interest or con-
cern in the matter was to save her son from prosecution,
and this was the consideration for the execution of the
notes sued on.

It was clearly an illegal contract, one which the law
would not enforce, nor against which will it afford relief.
If appellee, instead of executing her notes and mortgage
had paid to Claypool the $2,500 in cash, and then there-
after sought to recover of him this money on the ground
that it was paid for the purpose indicated, the law would
have afforded her no relief. She is in no better position
as to the notes by reason of the unlawful, vicious and
void contract into which she entered. The law will not
lend its aid to the enforcement of such a contract, but
simply leaves the parties where it finds them.

No judgment should have been entered against Clay-
pool & Co. To this extent the judgment of the lower
court is reversed, and the cause is remanded with in-
structions to set aside this portion of the judgment.