[No. 7666.]

## DERHAM ET AL. V. HILL ET AL.

1. CONVEYANCES—*Description.* Where there are in a conveyance of lands repugnant descriptions, that which in the light of the attendant circumstances most accords with the intention of the parties must be accepted. (350)

When a particular description is plainly false it should be rejected, and if enough remains to locate the land intended to be conveyed, the deed is effective. (350)

2. ——*Area—Metes and Bounds.* Lots 21 and 28, in a subdivision were separated by a road 40 feet wide. The proprietor of lot 28 executed a deed containing the following description: "the north nine acres, more or less of Lot 28 etc., more particularly described as follows: Beginning at the southwest corner of Lot 21" and running east 640 feet, south 605 feet, west 640 feet, and north to the place of beginning. *Held* apparent that the point of beginning at the southwest corner of Lot 21 was false, and must be rejected; that the north line of Lot 28 must be accepted as the north boundary of the lands intended to be conveyed, that with this line in view as controlling the initial point of the survey, the description by metes and bounds being found to include 8.88 acres, this corresponded sufficiently with the area declared to be conveyed, and fixed its locality; that subsequent purchasers from the grantee in this deed were chargeable with notice of the intention of the grantor so ascertained. (351, 352)

3. PRECEDENTS—*Construction.* Every opinion of the courts is to be construed in the light of the facts and circumstances of the case, giving each fact and circumstance its due weight. (349)

*Error to Mesa District Court*—Hon. SPRIGG SHACKLEFORD, Judge.

Messrs. LOGAN & MILLER, for plaintiffs in error.

Messrs. WHEELER & WEISER and Mr. SAM B. BERRY, for defendants in error.

CHIEF JUSTICE MUSSER delivered the opinion of the court:

In 1892, there was made and filed for record, in Mesa County, a plat of more than two hundred acres of land designated as The Grand Junction Orchard Mesa Land Company's Orchard Subdivision. The plat showed the land subdivided into numbered tracts or lots of about ten acres each, with various portions, forty feet wide, marked as roads. The particular lots, with which this lawsuit has to do, appeared on the plat as follows:

One Mrs. Powers became the owner of Lots 28 and 29, by deed, wherein the land was described as Lots 28 and 29 in the subdivision. In May, 1905, she made a deed to one Joynson, containing a description as follows:

"The north nine (9) acres, more or less, of Lot twenty-eight (28) of The Grand Junction Orchard Mesa Land Company's Orchard Subdivision, more particularly described as follows: Beginning at the southwest corner of Lot twenty-one (21) of The Grand Junction Orchard Mesa Land Company's Orchard Subdivision; thence east six hundred forty feet (640); thence south six hundred and five (605) feet; thence west six hundred and forty (640) feet; thence north six hundred and five (605) feet to the place of beginning:"

In July, 1905, Joynson made a deed to the Hills, defendants in error, wherein the land intended to be conveyed was described the same as in the deed from Mrs. Powers to Joynson. At the time these deeds were made, the road between Lots 21 and 28, shown on the plat, did not appear on the surface of the ground. Lot 28 was covered by fruit trees set in rows east and west and these rows of trees continued north and occupied the road. The Hills went into possession of the land under their deed from Joynson. On the south part of what they supposed was their land, there was first a row of apple trees and next, south, a row of prune trees. There was no fence between Lots 28 and 29, nor any division fence between the land claimed by the Hills and the portion south of it. Just south of the row of prune trees and about a foot or a foot and a half from the trees there was a furrow or ditch and from this the trees on the land were watered, the slope being to the north.

No survey or measurement of the land was made. The Hills supposed that the irrigation ditch south of the prune trees was their southern line or near it. When the dispute arose, measurements were made and it was found that the center of this ditch was about 585 feet south of the north line of Lot 28. In December, 1907, Mrs. Powers conveyed to the Derhams, the plaintiffs in error, Lot 29 and the south thirty-five feet of Lot 28. In the fall of 1911, the portion marked above as "road" was opened up as the result of an action brought for

that purpose by owners of adjoining tracts. The evidence seems to show that the parties here did not know of the existence of a roadway until it was forced open. Soon after getting their deed, the Derhams made some claim to the row of apple trees and the row of prune trees, just north of the irrigation ditch, which claim was disputed by the Hills and the latter remained in possession of and cultivated the two rows, and gathered the fruit therefrom. The Derhams testified that at the time they bought the land in 1907, Mrs. Powers showed them a plat which she had caused to be made, on which there were shown 42 rows of trees on Lot 29 and part of Lot 28, and she represented that she proposed to convey these 42 rows to the Derhams. It was claimed that these 42 rows took in the south two rows north of the irrigation ditch. There was also evidence that the Derhams set out a row of trees just south of the irrigation ditch and on the land in controversy. If there were 42 rows already set out from the south line of Lot 29 to the row of apple trees north of the irrigation ditch, it is not explained why there happened to be a vacant space south of the irrigation ditch on the land in controversy, on which to set out another row. As no measurements had been made, it is safe to say that none of the parties knew exactly where the dividing line was.

After making the deed in 1907 to the Derhams for Lot 29 and the south thirty-five feet of Lot 28, Mrs. Powers moved away from the neighborhood, evidently to California. Thereafter, the Derhams made claim upon her for more ground, and after some controversy, in December, 1910, she made a quit-claim deed to the Derhams for the south seventy-five feet of Lot 28. The north forty feet of the south seventy-five feet of Lot 28 is the land in controversy. In February, 1911, the Derhams took posession of this forty feet and erected a fence on its northern line about two feet north of the row of apple trees above mentioned, so as to include these apple trees as well as the row of prune trees. About June, 1911, the Hills began an action to recover

the possession of the forty feet in controversy, which resulted in a judgment in their favor. The court found that by the deeds from Mrs. Powers to Joynson and by the latter to the Hills it was the clear intention of the grantors to convey the land in controversy and that from the receipt of their deed the Hills were in the exclusive possession thereof, and farmed the same until dispossessed by the Derhams.

It is the claim of the Derhams that the deed from Mrs. Powers to Joynson, and from the latter to the Hills conveyed the north 565 feet only of Lot 28, and that the remaining forty feet included in the deeds was embraced in the road. They claim that the description "the north nine (9) acres, more or less, of Lot 28" must be disregarded and the description by metes and bounds with the place of beginning at the southwest corner of Lot 21 must be accepted as the true description of the land conveyed. They say that the words "nine acres, more or less," are merely descriptive and do not control the location by metes and bounds and that the description by quantity must yield to the more certain description.

We do not, in any manner, dispute the many authorities cited to sustain this contention. Had the description in the deed been "nine acres more or less described as follows," and then the point of beginning, and the metes and bounds given as in the deed, or had it started with the point of beginning and the metes and bounds and ended with the words, "containing nine acres, more or less," the quantity might have been of little importance, and the authorities cited might have been applicable.

What is said in this opinion, as is the case in every other opinion, is said in the light of all the surrounding facts and circumstances existing in the case, and each of these facts and circumstances are given weight in arriving at the conclusion reached. When the Derhams took their quit-claim deed they took it with full knowl-

edge, either actual or constructive, of the facts and circumstances which are mentioned, and having done so they ought to have been apprized with certainty of the land that was intended to be conveyed to the Hills. Where there are two repugnant descriptions in a deed, "the court will look into the surrounding facts and will adopt the description which is most definite and certain and which in the light of the surrounding circumstances can be said to effectuate most clearly the intention of the parties."—2 Devlin on Deeds, sec. 1038; *Wade v. Deray,* 50 Calif. 376.

In construing a deed, the object is to discover and effectuate the intention of the parties to it. While that intention is to be gathered from the language and words of the deed, it should be read in the light of the surrounding circumstances at least when it is ambiguous. —*Am. Nat. Bank v. Madison,* 144 Ky. 152, 33 L. R. A. (N. S.) 597, 137 S. W. 1076.

When a particular of a description is plainly false, that particular should be rejected, and if enough remains to locate the land, the deed is effective.—*Irving v. Cunningham,* 66 Calif. 15. When necessary, where in a deed two descriptions intended to apply to the same land are not reconcilable, evidence of extrinsic facts may be admitted to show the intention of the parties, confining this for the present to such parties as the Hills and Derhams, who each had full knowledge of the extrinsic facts admitted in evidence and referred to herein. And where a deed contains two descriptions of the land conveyed, the one which when applied to the land owned by the grantor is found not true, must be rejected.— *Ornett v. Dumbeck,* 39 Ind. Ap. 482, 78 N. E. 691.

In the deed in question, the description begins, "the north nine (9) acres, more or less, of Lot 28." There is more than mere quantity in this. It states definitely and certainly that all the land intended to be conveyed is in Lot 28 and it fixes the north line of that land as the north line of Lot 28. The beginning in this description is definite and certain. Instead of being a point it is a

line, to-wit, the north line of Lot 28, marked and limited on the plat as definitely and certainly as any corner of any lot. From this beginning the description certainly proceeds south with a width equal to that of Lot 28 until a line is reached marking the southern limit of an area equal to nine acres, more or less. There is some uncertainty, it is true, in the expression, "nine acres, more or less," but the description by metes and bounds following definitely shows the area of the tract intended to be conveyed and definitely fixes that area as the amount of land contained in an area 605 feet by 640 feet, which the court found to be 8.88 acres and which corresponds to the quantity expressed by nine acres more or less.

Looking closely at the description in the deed, it is plainly apparent that the point of beginning at the southwest corner of Lot 21 is false. It says: "The north nine (9) acres, more or less, of Lot twenty-eight (28) * * * more particularly described as follows: Beginning at the southwest corner of Lot twenty-one (21)," etc. By this language it was an area located entirely in Lot 28, and whose northern boundary was the north line of that lot that was intended to be described by the particular description, and by reference to the plat, it is plain that such an area cannot be described as attempted by beginning with the southwest corner of Lot 21. Such place of beginning is so plainly false that it must be rejected as a point of location of the land conveyed, and when it is so rejected, and retained merely as a point from which to describe an area equal to that conveyed, there appears described an area of ground wholly within and of the width of Lot 28, extending from east to west 640 feet, from north to south 605 feet, and bounded on the north by the north line of the lot.

From the county records, the Derhams, at the time they took their quit-claim deed, had notice that Mrs. Powers, when she made the deed to Joynson, owned Lots 28 and 29 and did not own the forty feet designated as "road," and could not convey such road, and that

no part of Lot 28 could be exclusively described by including that road. After making her deed to Joynson and her deed for the south thirty-five feet of Lot 28 to the Derhams, Mrs. Powers moved away and exercised no more dominion over any part of Lot 28, while the Hills were in possession and farmed all of Lot 28 north of the 35 feet described in Derham's deed.

As plainly appears from this record, Mrs. Powers intended to convey only land that she owned. If the description, beginning at the southwest corner of Lot 21, were applied to land owned by her, it would not fit, while, if the first description in the deed, together with the area of the tract as stated in the second description, were applied to her land, the description would exactly fit land owned by the grantor. All these facts and circumstances sustain the court below in its finding of what the intention of the parties to the deed was, and the Derhams knew or ought to have known that such was the intention at the time they took their quit-claim deed. The judgment is, therefore, affirmed.

*Judgment affirmed.*

Mr. JUSTICE GABBERT and Mr. JUSTICE HILL concur.