## Archie, et al. v. Brown.

(Decided March 11, 1919.)

### Appeal from Greenup Circuit Court.

1.  **Contracts—To Obstruct Justice—Void.**—A contract or agreement entered into for the purpose of obstructing or interfering with the administration of justice is void as against public policy and the courts, when called on to adjudge the rights of the parties under such a contract, will refuse to have anything to do with it.

2.  **Contracts—That Secured Release of Prisoner, When Not Void as Against Public Policy.**—Where a father was indicted and confined in jail for failing to provide for his family, under a statute providing that he might be released by the court if he made provisions for them, a contract entered into by the terms of which he made provisions for his family and was thereupon released from custody by order of the court, was not void as against public policy, as its purpose was not to obstruct the administration of the law.

3.  **Contracts—That Secure Release of Prisoner, When Not Void as Against Public Policy.**—Where the prosecuting witness with the knowledge and consent of the prosecuting attorney enters into a contract by which the prisoner may be released if the court consent to it will not be void as against public policy if the purpose of the contract is to carry out the intention of the statute under which the prisoner was arrested, and the disposition of the prosecution is left entirely in the hands of the court and the prosecuting witness is ready and willing to appear when called on.

J. B. BENNETT for appellants.

E. E. FULLERTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

John Archie was the first husband of Addie Brown, the appellee, and three children were born of their marriage. They resided in Lawrence county, Ohio, and

about 1912 John Archie abandoned his wife and children and soon thereafter he was indicted by the grand jury of Lawrence county, Ohio, for the offense of failing to provide for his wife and children, but was not arrested under the indictment until January, 1915, when he was taken into custody and confined in the jail of Lawrence county. A few days after this his father and brothers, who are the appellants, entered into the following contract with his former wife, the appellee; "Whereas the said John Archie is at present confined in the Lawrence county jail under an indictment for failure to provide for his children (. . .) and whereas an agreement as hereinafter set out has been effected between all interested parties, and whereas it is the special desire of the said first party to reduce said agreement to writing, it is therefore agreed and considered between the said parties as follows:

"Said first party, in consideration of the things and matters to be hereinafter set forth and agreed to by said second parties does hereby agree and consent, without waiving any rights whatsoever under the law, that John Archie should be released from his present confinement subject to the consent of the prosecuting attorney and the court from which said indictment is issued.

"Said John Archie as one of said second parties, being the father of three children now in the custody of said first party does hereby agree and bind himself to pay to said first party for the use and support of said three children the sum of $15.00 per month, said sum to be $5.00 each for said three children. The said William Archie, Ed Archie and Norman Archie, hereby agree to and bind themselves that should said John Archie fail in any way to pay said $15.00 per month as herein agreed by him that they will jointly and severally pay said sum of $15.00 as above set forth to said first party for the uses and purposes above set forth. And they each for himself guarantee the payment of said sum.

"It is mutually agreed, however, between any and all parties herein interested that upon the arrival of any one of said children at the age of sixteen years then said payment is to be decreased by $5 00 per month for each child thus arriving at said age. And the same is to be true in case either or all of said children should die before their arrival at said age of sixteen years. It is further agreed that should said John Archie die then the

said William Archie, Ed Archie and Norman Archie are each released from any further obligation under this contract.''

John Archie having failed to pay the sums stipulated in the contract, this suit was brought by Addie Brown in September, 1915, against the sureties in the contract to recover the unpaid installments, and after the case had been prepared and submitted there was a judgment awarding Addie Brown the relief sought.

A reversal of this judgment is sought upon the ground that the contract was void as against public policy because its purpose and effect was to obstruct the course of justice by compounding a felony.

It is provided in the statutes of Ohio that if a father who is able to do so fails or refuses to provide with the necessaries of life his wife or children, he shall be imprisoned in the jail for not less than six months nor more than one year, or in the penitentiary not less than one nor more than three years. And further provided that if a person, after conviction for a violation of this statute and before sentence, appears before the court in which the conviction took place and enters into a bond to the state of Ohio in a sum to be fixed by the court at not less than five hundred dollars with surety as approved by the court, conditioned that he will provide for his wife and children in a sufficient way, the sentence may be suspended.

In the answer to the petition the sureties in the contract set out these provisions of the Ohio statutes and pleaded that after this contract was entered into and solely by virtue thereof John Archie, who was then confined in jail, was released upon his own recognizance, and subsequently the indictment against him was filed away.

Mrs. Brown testifies that after her husband abandoned her and her children she procured an indictment against him under the statute heretofore set out and was ready and willing at all times to appear as a witness against him for his failure to support herself and children; that after he had been arrested and lodged in jail his father and brothers induced her to enter into the contract sued on but that she had nothing to do with his release from the jail on his own recognizance thereafter or the subsequent dismissal of the indictment against him; that she did not know that he would be released

from jail or that the indictment would be or had been filed away; that nothing was said at the time or before the contract was entered into in respect to either of these matters; that she was induced to execute the contract solely because she was desirous of having some provisions made for the support of her children and was not influenced by any other cause in entering into it; that the contract was prepared by a lawyer employed by the sureties, and the prosecuting attorney of Lawrence county, Ohio, was present when it was signed but she was not represented by counsel.

Mr. Cooper, the prosecuting attorney, testified in substance that it was the practice and custom in the court to release a prisoner in jail charged with the offense John Archie was guilty of when it appeared that satisfactory arrangements had been made to support his wife and children; that the purpose of the statute was to secure for the wife and children a support and whenever this was done the ends of the law were regarded satisfied and the delinquent parent, if in jail, released from custody and the indictment against him filed away. He said: "It was our custom to release them upon their own recognizance and let them out of jail in some manner—sometimes the indictment or warrant would be dismissed and other times it would be continued off of the docket and sometimes they would . . . take a suspended sentence. . . . " He further said that the disposition to be made of a person under an indictment for a charge like this was lodged exclusively, under the practice, in the court and prosecuting attorney; that Addie Brown did not at any time fail or refuse to appear as a witness against John Archie or have any power or authority to secure his release from jail or the dismissal of the indictment against him; that in his opinion the court had the right in cases like this to discharge the defendant upon his own recognizance and give him an opportunity to provide for his wife and family; that this practice was followed in more than half the cases of this kind; that after the contract, which appeared to make satisfactory provision for the support of Mrs. Brown and her children had been entered into, Archie was released from custody on his motion but the indictment was left pending against him until some months afterwards when it was filed away; that there was no understanding or agreement whatever between himself, or any person else,

so far as he knew, and Mrs. Brown that Archie should be released from custody or the indictment against him filed away.

Under the circumstances of this case as we have related them we do not think this contract violated any rule of public policy or hindered in any way the administration of the law. On the contrary the sole purpose of the contract was to carry out the intention of the law.

It is of course a familiar principle that any contract or agreement entered into for the purpose of obstructing or interfering in any manner with the administration of justice is void as against public policy and the courts when called on to adjudge the right of the parties under such a contract will refuse to have anything to do with it, leaving the parties in the position in which they placed themselves without giving to either the aid of the law to enforce the provisions of the contract. Illustrative cases on this subject are: Lucas v. Allen, 80 Ky. 681; Averbeck v. Hall, 14 Bush 505; Gordon v. Gordon, 168 Ky. 409; Powell v. Flanary, 109 Ky. 342.

Now it is true that Mrs. Brown agreed that John Archie "should be released from his personal confinement subject to the consent of the prosecuting attorney and the court from which said indictment is issued," but under this stipulation in the contract Mrs. Brown did not agree not to appear against Archie as a witness when wanted nor did she have any control over the disposition that might be made of the indictment or prosecution against him. So far as she was concerned she entered into the contract in perfect good faith and without the slightest intention of obstructing in any way the due administration of the law. The prosecuting attorney, who was present when the contract was entered into, was also acting in entire good faith and without having any purpose to assist in any way in interfering with the administration of justice.

It is also true that when the agreement was entered into and was found by the prosecuting attorney to make satisfactory provision for the wife and children of Archie the court on his motion released Archie from jail and subsequently dismissed the indictment against him, but this course was customarily pursued in cases like this when the objects for which the statute was enacted had been attained.

As we understand it the purpose of the statute as administered by the court was not so much the punishment of the offending parent as the protection of his wife and children, and when provision had been made for them the purpose of the statute was considered by the court as having been fulfilled.

The entire record shows in a very satisfactory way that the contract was not entered into for the purpose of obstructing or hindering in any manner or form the course of justice and that no thought of anything of this kind was in the mind of Mrs. Brown or the prosecuting attorney, who, being present, assented to the propriety and wisdom of the contract. It further shows that Mrs. Brown had nothing whatever to do with releasing Archie from jail or dismissing the indictment against him, as the disposition of these matters was exclusively within the control of the court. It further shows that she did not at any time or in any manner manifest any disposition not to appear against him; she simply consented that, if it was agreeable to the court that Archie might be released from custody, she had no objection.

In short, after as well as before the contract was entered into, the court had full control of the prosecution and the court, after it had been made to appear that Archie had satisfactorily arranged for the support of his children, permitted him to be released from custody and the indictment against him dismissed. This was the action of the court with a full knowledge of all the facts and not the result of anything that Mrs. Brown did or said except in so far as her entering into the contract contributed to bring about his discharge. And when a person enters into a contract with the consent and approval of the court and for the purpose of accomplishing the end to be attained by the law it cannot be said that such a contract was void as against public policy or tended to obstruct the administration of justice.

Wherefore the judgment is affirmed.