## Morris v. Jody.

(Decided November 16, 1926.)

### Appeal from Jackson Circuit Court.

1. Boundaries.—Courses and distances are controlled by marked corners and fixed monuments.
2. Boundaries.—In action to quiet title, evidence as to boundaries of tracts and corners held to establish purchaser's right to disputed land.
3. Contracts.—Agreement locating disputed boundary line, founded upon consideration that criminal prosecution for trespass and breach of peace be dismissed, held illegal and void.

LEWIS & LEWIS for appellant.

L. C. LITTLE and A. W. BAKER for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

This is an action to quiet title. The tract of land in
dispute contains less than 2 acres. Defendant below was
successful and plaintiff has appealed.

On February 14, 1900, Wiley Carpenter sold and con-
veyed a tract of land to appellee, Thomas Jody. On No-
vember 20, 1906, appellee and his wife sold and conveyed
a part of the Carpenter tract to appellant, J. K. Morris.
Before the conveyance was made a surveyor was em-
ployed to establish the boundary to be conveyed, and the
deed described it according to the survey so made. Since
the execution and delivery of that deed appellant, Morris,
has resided upon the land so conveyed to him, and ap-
pellee has resided upon the portion he had left after the
conveyance was made. So far as it affects the contro-
versy herein only the third and fourth lines of the tract
so conveyed as they were described in the deed are ma-
terial and need be quoted. Starting on a black oak cor-
ner, the third line is described to run, "thence north 29
west 48 poles to a stone and white oak," and the fourth
line, "thence north 55½ east 98 poles to a black oak
bush." The survey was made by Andy Simpson, and the
two lines above described were new lines, laid off then
for the first time. The testimony herein establishes with-
out contradiction that as he ran those lines on the ground
they included all the land in controversy within the boun-
dary conveyed to appellee. Some time after the survey
was made and appellee had taken possession under his
deed appellant discovered that the surveyor's chain used
by Simpson in measuring the boundary conveyed to ap-
pellee was 34 feet and 4 inches long instead of 33 feet,
the length of a standard chain. That started the contro-
versy which has led to this action. Appellee thereafter
claimed and insists herein that since the third line of the
boundary of the tract of land conveyed to appellant runs
from the black oak "north 29 west 48 poles to a stone and
white oak;" and the fourth, "thence north 55½ east 98
poles to a black oak bush," to ascertain the true boundary
line between them the distance of the third line from the
black oak must be measured by a standard chain and that
it must end where the distance 48 poles so measured ends.
Appellant contends that regardless of the fact that the
chain used in measuring his tract of land when he pur-
chased it was more than 33 feet long that the line actually

projected on the ground by the surveyor is controlling and that the distance 48 poles given in the third line of his deeded boundary must be lengthened to reach the point actually established as the corner at the end of that line by the survey which was made. The controversy between the parties that arose in the manner suggested seems to have lived in full vigor from its inception until this action was instituted by appellant to settle it by the orderly processes of the law.

The evidence even from appellee himself establishes that the lines of this survey as projected on the ground by the surveyor who established the boundary which was conveyed to appellant, though measured by a chain which made the distance only 48 poles, was actually 50 poles long and included all of the disputed land within appellant's boundary. The black oak corner from which the third line ran was then and yet is standing and marked. The evidence is not satisfactory to establish that a stone and white oak to which that line, according to the description in the deed, was said to run were then located at the end of the line as run by the surveyor. It will be observed, however, that the fourth line running from the stone and white oak runs north 55½ east 99 poles to a black oak bush. The evidence herein for appellant clearly establishes that a black oak bush stood at the end of that line as it was projected on the ground by the surveyor, and that it was then marked to denote it as the corner tree to which that line ran. The evidence for appellant further clearly establishes that the black oak bush then so marked is still standing. No evidence for appellee controverting that fact is found in the record. On the other hand, the evidence of the surveyor, who testified for appellee and who established the corner at the end of the third line by running that line from its beginning corner 48 poles, and who then ran the fourth line the given course from the end of the 48 poles, discloses that where he made the corner at the end of the 98 pole line he did not find a marked black oak bush. He stated though that his attention was called to the black oak bush; that it was marked as a corner tree; and that it stood at a point where if he had extended the 48 pole line two poles and run the fourth line from that point it would have ended at the marked black oak bush. These further facts appear herein to support appellant's contention. The tract of land which he purchased and which appellee con-

veyed to him had been contracted by the latter to another before he purchased it. The survey was made pursuant to the contract between appellee and the other. The person who had so contracted to purchase the land took possession of it and after the survey was made and pursuant to the contract between appellee and the previous purchaser, appellee erected a fence on the line dividing the two tracts of land just as it was run by the surveyor. The previous purchaser was unable to meet the payments and then the trade was made by which appellant succeded to his rights and the deed of conveyance was made to him. At that time and when the deed was made the fence which appellee himself had erected stood on the line as the surveyor located it on the ground, leaving all the land in controversy on appellant's side of that fence. Tillable land lies on either side of the fence, and the evidence without contradiction establishes that from the time appellant went into possession under his deed he has cultivated all the land on his side up to that fence; and that appellee has cultivated all of the land on his side only up to that fence. The fence stood from the time it was so constructed until a short time before this action was instituted.

All of the rules of law that have been adopted for guidance in locating disputed boundary lines have been to the end that in so doing the steps of the surveyor who originally projected the lines on the ground may be retraced as nearly as possible. No rule that has been adopted to accomplish that end is more firmly established than that courses and distances are controlled by marked corners and fixed monuments. Here all the evidence establishes that the lines of the survey in dispute were actually projected on the ground by the surveyor who established the boundary lines which are in dispute just as appellant contends they should be located. The evidence without contradiction establishes that the black oak corner from which the third line runs north 29 west and that the black oak bush to which the fourth line runs north 55½ east are both now standing and marked. That being true, the location of the lost corner, that marking the end of the third and beginning of the fourth line, presents one of the simplest of the problems of surveying. Run the third line from its known beginning corner and reverse the fourth line from its known ending corner until they intersect and the point of intersection fixes the loca-

tion of the lost corner. To locate the disputed fourth line of the survey as appellee contends it should be located would necessitate our disregarding altogether these fundamental and firmly established rules. Appellant's right to the small lot of land in dispute herein under his deeded boundary and all the facts competently in evidence relating thereto has been established beyond all question.

Appellee pleaded and insists that after the controversy arose between him and appellant as to the proper location of the fourth corner and the fourth line of the deed boundary they entered into a written agreement settling the controversy, which stipulated that the third line should run 48 poles and no further, and that the fourth line should run from the end of the 48 pole line north 55½ east; that that was done in the year 1911, and that thereafter until some time in the year 1922 both appellant and appellee acquiesced in the agreement so made. Appellant by reply admitted executing a writing purporting to settle the controversy by so agreeing as to the location of the line, but denied that it was ever acquiesced in by the parties, and pleaded that the contract under the consideration which caused it to be entered into was void as against public policy and that the consideration for it wholly failed.

The evidence establishes that in March, 1911, the controversy between the parties had become so acute that appellee caused warrants of arrest to issue for appellant and his father, charging them with criminal trespass and breach of the peace. The writing fixing the location of the line was then executed upon the consideration that those prosecutions be dismissed. Though it appears that appellee undertook to cause that to be done, the court issuing the warrants would not dismiss them but tried them to a conclusion. The judgments are filed as evidence herein. The writing further provided that the fencing should be rebuilt within a specified time; but after the failure to procure the dismissal of the warrants appellant would never consent to the change in the location of the fence and never thereafter acquiesced in the agreed location of the disputed line.

In Kimbrough v. Lane, XI Bush 556, it was written:

"It is an old and well-settled rule of the common law, that contracts having for their consideration an agreement to stifle a criminal prosecution are void,

because they are against the policy of the law, which will not permit an injury to the public to be made the subject of private agreements, whereby the redress of the public wrong may be hindered or defeated."

The principle there announced has been approved in numerous opinions following it.  See Averbeck v. Hall, 14 Bush 505; Wheeler & Wilson Mfg. Co. v. Hord, 4 R. 243; Chapman v. Haley, 117 Ky. 1004; McLane's Admr. v. Dixon, 30 R. 684; Scott v. O'Hara, 150 Ky. 200, 150 S. W. 63; American National Bank v. Madison, 144 Ky. 152, 137 S. W. 1076; Fear v. United Loan & Deposit Bank. 172 Ky. 255, 189 S. W. 226; Johnson v. McMillion, 178 Ky. 707, 199 S. W. 1070, L. R. A. 1918C, page 244.  The writing itself, relied upon by appellee, and all of the testimony relating to the matter, clearly show that the agreement locating the disputed line was founded upon the illegal consideration that appellee would dismiss the criminal prosecutions then pending.  The agreement then was brought clearly within the rule above and was void for the reason indicated.

Appellee contends that by the deed in question he undertook to convey only 41-1/6 acres to appellant, and that if the disputed line is fixed as appellant contends the boundary will contain more than the acreage specified.  We find in the record a calculation of the contents of the boundary of land conveyed to appellant when the disputed lines are located so as to include within it the small tract in controversy herein calculated by latitude and departure.  That is perhaps the most accurate method of calculating the area of a boundary of land. When so calculated the evidence establishes that the boundary, including the land in dispute, contains slightly less than 41-1/6 acres.  What method of calculation was used by the surveyor who testified for appellee herein is not disclosed.

Under all these facts, concerning which there is little or no contrariety of evidence, it is impossible to escape the conclusion that the chancellor erred in dismissing appellant's petition and granting the appellee the relief sought in his counterclaim.

For the reasons indicated the judgment herein is reversed and the cause is remanded, with directions that a judgment in conformity herewith be entered for appellant.