## Perry et al. v. Lambert's Guardian.

(Decided Dec. 5, 1933.)

CLAY & HOGGE for appellants.

D. B. CAUDILL, W. E. PROCTOR and LESTER HOGG for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The case presents a sequel to a pathetic story. Beckham Perry was indicted in March, 1928, of the crime of carnally knowing a fourteen year old child. A baby was born to her in July, 1928. The record shows that the accused had gone off, and it is said in brief that he had forfeited his bail. On September 28, 1928, at the appellant's store in Salt Lick, T. H. Perry, father of the accused, executed a check for $850 payable to John W. Fouch, sheriff of Rowan county. It was agreed

by all parties that he should hold the check under the terms of the following paper, which had been prepared by or for the Perrys and was then signed by the parents of the boy and girl, namely:

"This mutual agreement made and entered into this the 28th day of September, 1928, by Floyd Lambert and Vesta Lambert, parties of the first part, and T. H. Perry and Phenie Perry, parties of the second part.

"Whereas, Parties of the first part agree for the sum hereafter stated to fully release Beckham Perry, who is now in court with their daughter, Edna Lambert, and when the release is made by the court they are to have a check for $850.00 and both parties agree for Sheriff Fouch of Rowan County to hold the check until the release is made, their daughter Edna Lambert is also a party to the first part."

The child mother died in August, 1929. She had been present at court every term for the prosecution, notwithstanding T. H. Perry had begged her mother to send her out of the state to keep her from appearing. Some time after her death the indictment was filed away or dismissed. Fouch then indorsed and delivered the check to the girl's father. In the meantime Perry had stopped payment and the bank, of course, refused to honor the check. Thereupon this suit was filed by Floyd Lambert, as guardian of the illegitimate child, against T. H. Perry and his wife, Phenie Perry, trading and doing business under the firm name of Salt Lick Roller Mills (the check being of that firm), to recover the amount of the check. The petition alleged that it had been given for the benefit and support of the girl and her child, and further for the purpose of releasing the defendant's son from a bastardy proceeding. The answer was a traverse of part of the petition, a plea of no consideration, and a plea of illegal consideration in that the check had been given by the defendants solely for and under the plaintiff's agreement to compound a felony by having his daughter release the defendant's son "from being prosecuted" upon the indictment then pending against him.

Upon the trial the plaintiffs testified that the purpose of the agreement and the consideration for the

check were not to interfere with that prosecution, for they knew they could not do that, but was for the benefit of the daughter and her child; that the defendants were claiming they were "working with the Commonwealth" and the check was to be delivered by Fouch whenever the defendants got their son out of the difficulty. No bastardy proceeding had been instituted. There is no suggestion that such had been proposed or threatened. It was admitted that the only proceeding pending against Beckham Perry was the indictment to which we have referred. The defendants did not testify. They introduced only Fouch, who related the circumstances of the check and agreement being given him and his subsequent action when he found that the indictment had been dismissed and the accused released.

The case was submitted to the jury on two instructions. One was that the jury should find for the plaintiff if they believed the defendants or either of them had agreed with the plaintiff, as representative of his daughter and her child, that they would pay the sum stated to be used for their benefit. The other was to find for the defendants if the jury believed that the money was to be paid only for the purpose of having the case of commonwealth against Beckham Perry, then pending in court, filed away or dismissed. The jury found for the plaintiff, and the defendants have appealed.

The realities are manifested by the writing. The only charge upon which the defendant son was "now in court with their daughter" from which he could have been released by the court was the indictment. Notwithstanding the verbal testimony of the plaintiff and his wife contradicting the writing, it cannot be doubted that it was the pending criminal charge which was referred to and to which the agreement and promise related. If the promise of the defendants was merely to pay the sum of money for the use and benefit of the wronged children whenever their son should be released from that charge, then there was no consideration for the agreement. If it was in consideration of forbearance or the suppression of a prosecution or the release of the offender through the influence of the victim of the crime, or the girl's parents, then the consideration was an illegal one. Such practices are destructive of good government. To condone a crime, whatever the con-

sideration or reason may be, is to encourage lawlessness, to interfere with the administration of justice, and to defy the power of the constituted authorities. So contracts having that purpose as a consideration are universally regarded as vicious, as against public policy and, therefore, unenforceable. American National Bank v. Madison, 144 Ky. 152, 137 S. W. 1076, 38 L. R. A. (N. S.) 597; Steele v. Crawford, 197 Ky. 798, 248 S. W. 197; Clark's Adm'x v. Campbell, 212 Ky. 341, 279 S. W. 327.

A distinction is sharply drawn between a contract of the nature discussed and one promising to pay a sum of money in order to prevent the institution of or to secure the dismissal of a bastardy proceeding under the statute (Ky. Stats. sec. 166 et seq.). It is founded upon the difference in the nature of the proceedings. The former is obstruction of justice or the hindrance of punishment of the offender by the commonwealth for an offense against the social order. The latter is a civil proceeding of a quasi criminal character authorized by law to compel the father of an illegitimate child to perform a natural duty to support his offspring and a public duty to avoid that burden being cast upon society. Bowling v. Bowling, 222 Ky. 396, 300 S. W. 876; Smith v. Wagers' Adm'rs, 238 Ky. 609, 38 S. W. (2d) 685. We have recently had occasion to consider a contract of this character in Mayfield v. Cupp, 251 Ky. 328, — S. W. (2d) — , decided November 14, 1933, to which reference is made for a more extended discussion of validity.

Counsel for appellees rely upon Archie v. Brown, 183 Ky. 592, 209 S. W. 522. There a father had been indicted in Ohio for a failure to support his children, which was a felony. With his father and brothers as sureties, he entered into an agreement with his former wife, the mother of the children, to pay her $15 a month for their support, and the prosecution was dismissed because of it. In a suit to enforce the contract, the defense of an illegal consideration, to wit, the compounding of a felony, was pleaded. It was established that the real purpose of such indictments was to compel a derelict father to care for his children, and when that object had been obtained or arrangements to that end made, the practice was to dismiss the prosecution. The distinction between the circumstances of that case and

one like that now before us is fully discussed in the opinion. It must, therefore, be held inapplicable to the present state of facts.

The plea of the appellee strikes a sympathetic chord, while the attitude of the appellants is not free of condemnation as judged by the common conceptions of mankind. They made the bargain—apparently instigated it—and when fate intervened to their advantage, they broke their promise and invoked the protection of the law which they had circumvented and perverted. It has been said that hard cases make shipwreck of the law. Sometimes it is so; but it ought not to be. This is a case that appeals to the sense of fairness among men, yet the inexorable decree of the law forbids redress to the plaintiff and compels a reversal of the judgment. So far as forcing the appellants to contribute this sum or any other to the support of this pathetic child, there is left only the tribunal of conscience, which exists independent of edicts and decrees of courts. We cannot relieve them of a moral responsibility arising in part, at least, from their express promise or commitment to the unhappy parents of the wronged child upon whom the burden has fallen. The parents of the young man, in comparison to those of the wronged girl, appear to be in affluent circumstances. As to the father of the waif, bastardy proceedings to coerce him to maintain her seem to be now barred by limitations. Section 168, Kentucky Statutes. The reproach of his own soul and the stings of conscience ought to compel the performance of an imperative and natural duty. The prosecuting officers doubtless felt that the fortuitous circumstance of the girl's death required a dismissal of the charge at the time. Yet this record discloses Beckham Perry's guilt. Indeed, it is admitted. There has apparently been a miscarriage of justice. But see Commonwealth v. Smith, 140 Ky. 580, 131 S. W. 391.

We are of opinion that the court should have directed a verdict for the defendants. The judgment is therefore reversed for consistent proceedings.